No. 50,962

THOMAS E. BENSON, *Plaintiff-Appellant,* v. FARMERS INSURANCE COMPANY, INC., A Corporation, *Intervenor-Appellee,* and KENNY R. BEERS, *Defendant.*

(610 P.2d 605)

Opinion filed May 10, 1980.

*Donald W. Vasos,* of Scott, Daily, and Vasos, of Kansas City, argued the cause and was on the briefs for the appellant.

*Robert D. Benham,* of McAnany, Van Cleave, and Phillips, P.A., of Kansas City, argued the cause and was on the brief for the intervenor-appellee.

The opinion of the court was delivered by

PRAGER, J.: This appeal involves a controversy between the owner of an insured motor vehicle and his insurance company over the validity of a provision in an insurance policy which excludes uninsured motorist coverage where the insured, without written consent of the company, makes a settlement with any person or organization who may be legally liable for plaintiff's damages. The essential facts in the case are not in dispute and are as follows: On June 13, 1976, the plaintiff-appellant, Thomas E. Benson, was injured in a motor vehicle collision between plaintiff's motorcycle and an automobile operated by the defendant, Kenny R. Beers. At the time of the accident, Benson was insured by Farmers Insurance Company under an automobile liability insurance policy which included an uninsured motorist endorsement. The insurance policy contained the following exclusion applicable to uninsured motorist coverage:

"EXCLUSIONS

"This policy does not apply . . .

"(1) to damages with respect to which any insured, . . . shall, without written consent of the Company, make any settlement with any person or organization who may be legally liable therefor . . . ."

Following the accident, Benson commenced an action to recover damages from Beers. It appears that Beers had purchased his automobile only the day before the accident occurred and, at the time of the accident, had not yet obtained his own automobile liability insurance coverage. The Beers vehicle had been covered by an insurance policy issued to the previous owner by Casualty Reciprocal Exchange (Casualty). Plaintiff was covered by three separate insurance policies issued by Farmers Insurance Company (Farmers), all of which contained uninsured motorist coverage. Benson filed his petition against Beers to recover damages for his personal injuries on September 28, 1976. Defendant Beers originally retained his own private counsel to represent him in the case. They made a demand upon Casualty to defend Beers in the action. Casualty agreed to defend Beers under a reservation of rights, denying that Beers had any right to liability insurance protection or coverage under the previous owner's policy. When plaintiff Benson discovered that it was questionable whether Beers had insurance coverage, he made demand upon Farmers under the uninsured motorist provisions of his policy. Thereafter, on motion, Farmers was permitted to intervene in the action to protect its interests.

After Farmers intervened in the action, plaintiff began negotiating a settlement with Beers and Casualty. They agreed to a proposal by which Benson was to receive $10,000 in exchange for a covenant not to sue Casualty. The agreement was entered into between Benson, Beers, and Casualty without the written consent of Farmers. The agreement provided in part as follows:

"1. Casualty Reciprocal Exchange does, with the execution of this agreement, pay the sum of Ten Thousand ($10,000.00) Dollars, receipt of which is hereby acknowledged to Thomas E. Benson. It is agreed and understood by and between the parties hereto that the amount paid ($10,000.00) is not in full satisfaction of the loss sustained by Benson and Benson reserves all rights to seek full recovery as hereinafter provided.

. . . .

"3. It is agreed by and between Dodson Insurance Group and Casualty Reciprocal Exchange, its successors and assigns, and Thomas E. Benson, that Thomas E. Benson covenants not to sue Casualty Reciprocal Exchange or Dodson

Insurance Group, or their successors and assigns, or otherwise attempt to collect any judgment that may be rendered in favor of Thomas E. Benson in the above-referenced case from Dodson Insurance Group or Casualty Reciprocal Exchange. It is further agreed and understood that Thomas E. Benson, by entering into this agreement is not releasing or otherwise waiving a claim he has or may have against Kenny R. Beers and/or Farmers Insurance Company, Inc. It is specifically understood that Dodson Insurance Group and Casualty Reciprocal Exchange have heretofore and does deny any obligation to Kenny R. Beers or Thomas E. Benson under such policies of insurance issued to Marion Andrews in connection with that certain 1973 Pontiac Firebird automobile, which was operated by Kenny R. Beers at the time of the accident involved in the litigation herein and that the payment made herein is by way of strict compromise.

"4. The parties hereto further specifically agree and understand that Thomas E. Benson may continue with his action against Kenny R. Beers described above, and that Kenny R. Beers may proceed to provide a defense for himself in such action, or that a defense may be provided by Farmers Insurance Group. The parties hereto understand and agreed that both the liability and the nature and extent of the injuries to Thomas E. Benson are disputed.

"5. The parties understand and agree that if Thomas E. Benson does elect to proceed against Kenny R. Beers, he may or may not recover a judgment. In the event Thomas E. Benson does recover a judgment against Kenny R. Beers, Thomas E. Benson shall be free thereafter to proceed against Farmers Insurance Company, Inc. or any member of Farmers Insurance Group on any policy issued to Thomas E. Benson or any other Farmers policy which may be found to extend coverage to Kenny R. Beers, seeking to recover damages on the basis that Kenny R. Beers was an uninsured motorist or seeking to determine that Farmers Insurance Company, Inc. is a primary, secondary or co-insurer of Kenny R. Beers, and as such is responsible to pay damages due Thomas E. Benson as a result of the judgment entered against Kenny R. Beers. It is agreed that the payment under paragraph 1 will be a credit on any judgment against Kenny R. Beers.

"6. If in any suit it is determined that Beers is not insured, Kenny R. Beers and Thomas E. Benson expressly understand and agree that Farmers Insurance Company, Inc. may have certain claims to apply the payment under this agreement to any obligation they may have and agree to be bound by any final adjudication of any court in this regard, this question being the proper subject of court adjudication. They further understand and agree that in the event a payment is made to Thomas E. Benson by virtue of an adjudication that Kenny R. Beers is uninsured, Farmers Insurance Company, Inc. has contractual and statutory subrogation rights to the extent of such payments against Kenny R. Beers if he is responsible legally for the damages sustained by Thomas E. Benson occasioning the payment under the uninsured motorist provisions of the Farmers Insurance Company policy. The parties to this agreement specifically ratify and affirm those rights, and this agreement is not intended to nor shall it in any way interfere or affect any rights of Farmers Insurance Company, Inc. not otherwise waived by Farmers Insurance Company, Inc. to subrogation for payments made by them if Kenny R. Beers is uninsured as a result of court adjudication.

"7. It is understood and agreed between the parties hereto that Casualty Reciprocal Exchange and Dodson Insurance Group shall be relieved of any

further liability to any of the parties hereto under any insurance coverage or claims of insurance coverage made against them in connection with the accident and action in question . . . ."

It is not clear from the record exactly when this agreement was executed.

Farmers thereafter filed a motion for summary judgment or in the alternative to dismiss on the grounds that the settlement triggered the policy exclusion cited above, since the settlement between Benson, Beers, and Casualty had been entered into without the written consent of Farmers. Farmers maintained that, as a result of the settlement agreement, its subrogation rights had been impaired. The primary issue raised by Farmers' motion was whether the exclusion clause in the insurance contract between Benson and Farmers applied to such a settlement and thus whether the plaintiff's entering into the settlement without Farmers' consent, excluded Farmers' contingent liability under the policy.

The trial court sustained Farmers' motion and granted summary judgment in its favor. The court held that the settlement agreement impaired Farmers' subrogation rights under K.S.A. 40-287 and that the agreement violated the policy terms requiring the insurer's consent to any settlement with someone who might be liable. Hence, the trial court found that the uninsured motorist coverage under Benson's insurance policy had been excluded. Benson brought a timely appeal to this court.

The plaintiff first contends that an exclusionary clause in an uninsured motorist policy which prohibits a settlement by the insured without the consent of the company conflicts with the broad insurance coverage mandated by K.S.A. 40-284 and is therefore invalid and unenforceable. The trial court rejected this contention and upheld the validity of the exclusion clause. In its memorandum opinion, the trial court reasoned as follows:

"Uninsured motorist coverage is mandated by statute in Kansas. K.S.A. 40-284 provides:

" 'No automobile liability insurance policy covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless the policy contains or has endorsed thereon, a provision with coverage limits not less than the limits for bodily injury or death set forth in K.S.A. 1967 Supp. 8-729, providing for payment of part or all sums which the insured or his legal representative shall be legally entitled to recover as damages from the uninsured owner or operator of the motor vehicle. . . .'

"With respect to the purpose of the statute and its construction, the court has stated:

" 'The purpose of legislation mandating the offer of uninsured motorist coverage is to fill the gap inherent in motor vehicle financial responsibility and compulsory insurance legislation and this coverage is intended to provide recompense to innocent persons who are damaged through the wrongful conduct of motorists who, because they are uninsured and are not financially responsible, cannot be made to respond in damages. As remedial legislation it should be liberally construed to provide the intended protection. *Winner v. Ratzlaff*, 211 Kan. 59, 63-64, 505 P.2d 606 (1973).'

"In light of public policy behind the act requiring such coverage, various policy clauses which purport to condition, limit, or dilute the unqualified uninsured motorist coverage required by the statute, have been declared void by the Kansas Supreme Court. These include: a clause requiring that a judgment first be obtained against the uninsured motorist before permitting recovery from the insurer (*Winner v. Ratzlaff*, supra); 'consent to sue,' 'other insurance,' 'proof of loss,' 'medical authorization,' and 'furnishing of medical reports' clauses when operating as condition precedents to enforcement of an uninsured motorist endorsement. (*Clayton v. Alliance Mutual Casualty Co.*, [212 Kan. 640, 512 P.2d 507 (1973)]); and, an exclusionary clause purporting to exclude from coverage an insured person occupying the insured automobile when his injuries were caused by an uninsured operator of an uninsured automobile owned by the named insured (*Forrester v. State Farm Mutual Automobile Ins. Co.*, 213 Kan. 442, 517 P.2d 173 (1973)).

"The common denominator of the above cases can be found in clauses which would prevent the insured from receiving any type of settlement from the insurer. Each case involves a restriction on the insured's ability to recover without significantly protecting the insurer's rights under the statute. By law, however, the insurer has subrogation rights against any person who may be liable for the tort committed against the insured. (K.S.A. 40-287). The exclusion clause forbidding settlements without consent is merely designed to protect that right. This enforcement of statutory rights by the use of an exclusionary clause cannot be viewed as contrary to public policy requiring compensation to innocent persons injured by the tortious conduct of an uninsured motorist. To be compensated under the policy, all the insured need do is establish liability of an uninsured motorist. Where, as here, there is a question concerning whether the tortfeasor was insured, the same considerations apply. Once liability has been established, the insurer must pay. The insurer then can, assuming its subrogation rights remain unimpaired, press an action against both the tortfeasor and his purported insurance company to collect the judgment. This procedure allows for both compensation to the innocent tort victim and preservation of the insurance carrier's subrogation rights.

"In entering the settlement agreement with Casualty, the plaintiff has prevented Farmers from pursuing an action against Casualty. Whether Casualty is in fact the defendant's insurer is now academic; they are no longer obligated to pay any judgment arising from this action. . . . Thus, this court concludes that the plaintiff's actions in entering into an unauthorized settlement agreement with the insurance company representing the defendant in this action constitutes a signif-

icant impairment of Farmers' rights under the policy and that the exclusion clause examined in this opinion is valid and operates to deny liability under the policy. The determination as to the exclusion clause's validity applies only to the factual context presented here. It is, of course, possible to hypothesize a situation where the very same clause might well be declared invalid. For example, when such a clause operates to forbid unauthorized settlements with third party tortfeasors or their insurers when the uninsured motorist coverage is not applicable to them."

Other jurisdictions are split on the validity of policy provisions excluding uninsured motorist coverage for unauthorized settlements. Most courts have upheld such exclusions as protecting the insurer's legitimate right to subrogation. See, *e.g., Castorena v. Employers Casualty Company,* 526 S.W.2d 680 (Tex. Civ. App. 1975); *LaBove v. American Employers Insurance Company,* 189 So. 2d 315 (La. App. 1966); and the many cases cited in the annotation in 25 A.L.R.3d 1275. In other jurisdictions, the exclusion of coverage for unauthorized settlement has been held invalid when applied to settlement with an insured third-party tortfeasor. See, *e.g., Government Employees Ins. Co. v. Shara,* 137 N.J. Super. 142, 348 A.2d 212 (1975); *Hawaiian Ins. & Guar. v. Mead,* 14 Wash. App. 43, 538 P.2d 865 (1975); *Dairyland Insurance Company v. Lopez,* 22 Ariz. App. 309, 526 P.2d 1264 (1974); *Harthcock v. State Farm Mutual Automobile Ins. Co.,* 248 So. 2d 456 (Miss. 1971); and *Michigan Mut. Liab. Co. v. Karsten,* 13 Mich. App. 46, 163 N.W.2d 670 (1968).

The rationale of the trial court as to the validity of the consent to settlement exclusion is sound and is approved by this court. Where the insurer's right of subrogation is provided for by statute as in K.S.A. 40-287, the insurer has a legitimate interest to be protected. We have concluded that the exclusion from coverage because of a settlement by the insured without the consent of the insurer is reasonably intended to protect the insurer's right of subrogation, and is valid and enforceable.

We must next consider whether the exclusion contained in plaintiff's insurance policy is applicable under the factual circumstances now before us. We have concluded that it is. The settlement in this case was not with a third-party tortfeasor involved in the accident or a settlement which purports to release the uninsured motorist from liability arising out of the accident. Instead, the settlement agreement releases an insurance company from liability without affecting the liability of the uninsured tortfeasor. This unique situation was specifically addressed in

*Castorena v. Employers Casualty Company,* 526 S.W.2d 680, where a suit was brought by an automobile passenger against his own insurer under his policy's uninsured motorist provision. The passenger had released his driver's insurer in a settlement for $1,000 without his own insurer's consent. The Texas Court of Civil Appeals, in interpreting an exclusion provision identical to the one involved here, held that coverage was voided by the unauthorized settlement. The court noted that the insured sought to avoid the exclusion clause by arguing that he settled with the driver's insurer and not the driver. The court dismissed that argument, observing that although the driver's liability had not been established, if it was, the plaintiff's insurance company would be subrogated to plaintiff's rights against him. Further, the court noted that the driver's insurer was obligated to defend and pay within policy limits any judgment against him. *Castorena* demonstrates that an impairment of the insurer's effective ability to collect from the tortfeasor not only results from a release of the tortfeasor, but also from the release of a third party who may be liable by a contract with the tortfeasor. In the present case, Benson agreed to release Casualty from possible liability if the defendant Beers was found responsible for the accident. Thus, Farmers is limited in any attempt to recover payments made under its uninsured motorist provision to the defendant Beers alone. This represents a substantial impairment of Farmers' rights to subrogation.

The exclusion of uninsured motorist coverage becomes effective when the insured, without written consent of the company, makes any settlement with any person or organization *who may be legally liable therefor.* This specific language, in an identical policy provision, was interpreted in *LaBove v. American Employers Insurance Company,* 189 So. 2d at 318, 25 A.L.R.3d 1269 (1966), where it was held that the application of the provision was not restricted to a settlement with the uninsured motorist but also included a settlement with any person who possibly, perhaps, or by chance may be liable. The court in *LaBove* relied in part on the interpretation of the words "may be" found in *State v. Howland,* 153 Kan. 352, 360, 110 P.2d 801 (1941). In *Howland,* it was held that the words "may be" are used as equivalent to possibly, perhaps, or by chance. The language contained in the exclusion in this case is clear and unambiguous. It is part of the

contract entered into between Farmers and its insured, Benson. As noted above, this provision is valid and enforceable and binding upon the parties. Since the insured, Benson, made a settlement without the written consent of the company with a person or organization who may be legally liable for plaintiff's damages, the uninsured motorist coverage under the Farmers' policy has been excluded, rendering it inapplicable to the injuries suffered by Benson in this case.

Plaintiff next maintains that Farmers, by failing to respond to the plaintiff's request for a consent to the settlement, waived its right to require its consent to the settlement. The plaintiff in his brief cites authorities which hold that the consent requirement before settlement may be waived by the insurer's arbitrary and unreasonable refusal to give the required consent. *Courson v. Maryland Casualty Company*, 475 F.2d 1030 (8th Cir. 1973); *Pickering v. American Empl. Ins. Co.*, 109 R.I. 143, 282 A.2d 584 (1971); *Poray v. Royal Globe Ins. Co.*, 90 N.J. Super. 454, 217 A.2d 916 (1966); and *Levy v. American Automobile Ins. Co.*, 31 Ill. App. 2d 157, 175 N.E.2d 607 (1961). In *Tuthill v. State Farm Ins. Co.*, 19 Ill. App. 3d 491, 311 N.E.2d 770 (1974), the court acknowledged that the insurer should not be allowed to preclude access to the courts by arbitrarily, and without reason, withholding consent to suit or settlement. Withholding consent arbitrarily or without reason was held to constitute a waiver. In determining whether or not the withholding of consent was arbitrary, the test is whether the insurer had the opportunity to participate in the settlement negotiations. See also *Sylvest v. Employers Liability Assurance Corp.*, 252 So. 2d 693 (La. App. 1971), holding that the insurer's knowledge of the settlement did not alone satisfy the consent requirement. In the case now before us, we have concluded from the record that there is no evidence which required the trial court to find that Farmers acted in any way arbitrarily or unreasonably in refusing to give its consent to the settlement agreement reached in this case. We note that on September 27, 1978, counsel for Farmers filed a written request for production of the settlement agreement entered into by Benson and Casualty Insurance Company. Counsel for the plaintiff objected to the request for production of that agreement. These circumstances support the position of Farmers that plaintiff's attorney refused to furnish Farmers with a copy of the agreement. In view of this

evidence, it is difficult to see how Farmers acted arbitrarily or unreasonably in refusing to give its consent to the settlement agreement.

The judgment of the district court is affirmed.