HORACE MANN INSURANCE COMPANY, a corporation, Plaintiff,

v.

Gloria A. AMMERMAN, Dennis D. Ammerman, Ramona A. Roberts, and Leigh A. Ross, Defendants.

Civ. A. No. 84-2475.

United States District Court, D. Kansas.

Jan. 15, 1986.

Hal Pierce, Couch & Pierce, Chartered, Overland Park, Kan., for plaintiff.

Craig A. Strayer, Condon, Baker, Strayer & Shouse, Kansas City, Mo., John H. Hardy, Overland Park, Kan., for defendants.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

In this declaratory judgment action, the following motions are now pending: (1) defendants' motions to dismiss, (2) defendants' motion for summary judgment, and (3) plaintiff's motion for summary judgment. We are now prepared to rule on those motions.

The facts in this case are undisputed. Plaintiff issued an automobile insurance policy to Mr. Lee Dean Ammerman, with the last renewal thereof valid through April 29, 1984. The policy included underinsured motorist coverage with policy limits of $250,000.00 per person or $500,000.00 per occurrence. On November 17, 1983, Mr. Ammerman was in a fatal two-car accident. The driver of the other car, Mrs. Robinette Chadwick, was insured through the Allstate Insurance Company. Her auto liability insurance policy limit was $50,000.00.

Defendants are the heirs-at-law of Mr. Ammerman. Under the Kansas Wrongful Death Act, K.S.A. 60-1901 *et seq.*, such heirs are authorized to recover damages for the death of their decedent. Because Mr. Ammerman's underinsured motorist policy defines "insured" to include "any person entitled to recover damages because of bodily injury to or death of" a policyholder, defendants also qualify as "insureds" under that policy. The policy elsewhere contains the following provision:

There is no coverage for any insured who, without our written consent, settles with any person or organization who may be liable for the bodily injury.

On March 29, 1984, defendant Gloria Ammerman (Mr. Ammerman's widow) signed the following *"RELEASE OF ALL CLAIMS"*:

THIS INDENTURE WITNESSETH that, *in consideration of the sum of Fifty Thousand and No/100 Dollars ($50,000.00)*, receipt whereof is hereby acknowledged for myself, Gloria A. Ammerman, widow of Lee Dean Ammerman, and for my heirs, personal representatives and assigns *I do hereby release and forever discharge Mr. Lonnie Chadwick and Mrs. Robinette Chadwick, husband and wife*, of Spring Hill, Miami County, Kansas, *and the Allstate Insurance Company*, their heirs, representatives and assigns, *from any and all claims*, demands, damages, costs, expenses, loss of services, actions, and causes of action, *arising from any act or occurance* (sic) *up to the present time and particularly on account of all expenses, personal injury, disability, death, property damages, losses and damages of any kind already sustained by Lee Dean Ammerman or myself, heirs, personal representative and assigns, or that may hereinafter be sustained as a consequence of an accident that occurred on or about the 17th day of November, 1983*, at or near the intersection of 175th Street and Lone Elm, Olathe, Johnson County, Kansas.

To procure payment of said sum, I hereby declare: that I am more than 21 years of age; that no representations about the nature and extent of said injuries, disabilities, damages or death, made by any physician, attorney or agent of any party hereby released, nor any representations regarding the nature and extent of legal liability or financial responsibility of any of the parties hereby released, have induced me to make this settlement; that in determining said sum there has been taken into consideration not only the ascertained injuries, disabilities and damages, but also the possibility that the injuries sustained may be permanent and progressive and recovery therefrom uncertain and indefinite, so that consequences not now anticipated may result from the said accident.

I hereby agree that as a further consideration and inducement of this compromise settlement, this settlement shall apply to all unknown and unanticipated injuries and damages resulting from said accident, casualty or event, as well as, to those now disclosed.

I understand that the parties hereby released admit no liability of any sort by reason of said accident and that said payment and settlement in compromise is made to terminate further controversy respecting all claims for damages that I have heretofore asserted or that I or my personal representative might hereafter assert because of this accident.

I further understand that such liability as may or shall have been incurred, directly or indirectly, in connection with or

for damages arising out of the accident to each person or organization released and discharged of liability herein, and to any other person or organization, is expressly reserved to each of them, such liability not being waived, agreed upon, discharged nor settled by this release.

*It is understood and agreed that this settlement reserves the right of the undersigned to proceed under K.S.A. 40–284(b) and/or his personal automobile liability insurance policies for benefits issued under the underinsured coverages of said policies in relation to damages for bodily injury or death to the extent such coverage exceeds the limits of bodily injury coverage carried by Lonnie Chadwick and/or Robinette Chadwick, which are being paid herewith. The rights of the undersigned to recover under said policies shall not be abrogated or diminished by this settlement.*

Signed and sealed this 29 day of March, 1984.

[/s/]Gloria A. Ammerman
GLORIA A. AMMERMAN

(Emphasis added.)

Although the last paragraph of this release does make reference to a reservation of rights to proceed under Mr. Ammerman's underinsured motorist policy, the release was subsequently reformed to more clearly reflect the intention of the parties thereto. In a journal entry of November 28, 1984, the District Court of Johnson County, Kansas, ordered that the following sentence be added at the end of the sixth paragraph of the above-quoted release:

The subrogation rights of Horace Mann Insurance Company against Robinette Chadwick, if any, arising from any payment made or to be made by Horace Mann Insurance Company under the underinsured motorist coverages are not affected by this agreement.

In accordance with the terms of the release, Allstate Insurance Company paid to defendants the $50,000.00 provided for in Mrs. Chadwick's insurance policy. On February 11, 1985, defendants filed suit in the District Court of Johnson County, Kansas, against Mrs. Chadwick, alleging that her negligence caused the death of Mr. Ammerman. Mrs. Chadwick confessed judgment in that action. On March 20, 1985, the state court entered judgment in favor of defendants and against Mrs. Chadwick in the amount of $200,000.00. Although properly notified of that state court proceeding, plaintiff chose not to intervene.

Plaintiff filed this action for declaratory relief on December 6, 1984, (*i.e.*, after reformation of the release, but before defendants filed their state court action against Mrs. Chadwick). Plaintiff seeks a declaratory judgment that the release executed by Mrs. Ammerman without plaintiff's written consent violated the quoted clause from Mr. Ammerman's underinsured motorist policy, and that said policy is therefore void. Defendants have counterclaimed for the $200,000.00 allegedly due them under that policy—said amount being the difference between the $250,000.00 per person policy limit and the $50,000.00 already received from Allstate Insurance Company.

I. *Motions to Dismiss.*

Initially, a joint motion to dismiss was filed by the three defendants who had then been served with process. When the fourth defendant eventually received service of process, he also moved to dismiss. Because both motions raise identical issues, they will be considered together.

Defendants argue that the relief plaintiff seeks is foreclosed by plaintiff's failure to intervene in the state court action filed by defendants against Mrs. Chadwick. As authority for this argument, defendants cite the recent Kansas Supreme Court decision in *Haas v. Freeman*, 236 Kan. 677, 693 P.2d 1199 (1985). Especially pertinent is the following language from that opinion:

We reiterate our previous conclusions in *Winner* [*v. Ratzlaff*, 211 Kan. 59, 505 P.2d 606 (1973)] that all issues in a lawsuit should be tried in one trial. Multiplicity of suits does not promote substantial justice. Thus, the issues in cases involving uninsured motorists and under-

insured motorists should be tried in one lawsuit.

236 Kan. at 682, 693 P.2d at 1203.

█ Contrary to the implication of defendants' argument, however, *Haas* did not establish a rule of mandatory intervention in a case such as this. The court's actual holding was as follows:

For these reasons we hold in an action involving an underinsured motorist, the parties shall proceed as follows:

When the litigant determines the opposing party's liability coverage is below his liability coverage as well as the amount of damages claimed, and he wishes to invoke the underinsured motorist clause of his insurance policy, he shall notify his insurance carrier in the manner prescribed in the insurance policy.

The insurance company may then intervene in the case *at its election*. If it elects to intervene, it shall be a named party to the action. If the insurance company elects not to intervene, K.S.A. 60–454 [excluding evidence of liability insurance coverage] is applicable. In either case the litigant's underinsured motorist insurance carrier is bound by any judgment obtained in the action.

236 Kan. at 682–83, 693 P.2d at 1203–04 (emphasis added). Clearly, plaintiff retained the right *not* to intervene in the state court action. By electing not to do so, of course, it did become bound by the state court's determination that defendants had suffered damages of $200,000.00 and that Mrs. Chadwick was liable therefor. However, the question at issue in this declaratory judgment action, *i.e.*, whether plaintiff is liable to defendants, was not even addressed in the state court action. Therefore, plaintiff in no way forfeited its right to contest such liability.

On the contrary, the Tenth Circuit has held that:

Declaratory judgment actions are seen as useful in actions wherein insurance companies seek to have their liability declared. We have expressly recognized that one of the primary functions of the Act is to provide the insurer such a forum.

*Farmers Alliance Mutual Insurance Co. v. Jones,* 570 F.2d 1384, 1386 (10th Cir. 1978), *cert. denied,* 439 U.S. 826, 99 S.Ct. 97, 58 L.Ed.2d 119 (1978) (citations omitted). Accordingly, defendants' motions to dismiss will be denied.

II. *Motions for Summary Judgment.*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Because there are no material factual disputes in this matter, we need only determine which motion for summary judgment carries the greater legal authority.

As explained above, the theory underlying plaintiff's motion for summary judgment is that the release signed by Mrs. Ammerman constituted a settlement of defendants' claim against one who might have been liable for Mr. Ammerman's death. Because it was executed without plaintiff's written consent, such settlement is alleged to have voided defendants' right to recover on the underinsured motorist policy.

By contrast, defendants contend that the release was specifically designed to protect plaintiff's right to recover from Mrs. Chadwick any money plaintiff might pay to defendants on the underinsured motorist policy. Integral to defendants' argument is the existence of K.S.A. 40–287, which provides that an insurer that pays on an underinsured motorist policy becomes subrogated to the rights of its insured against the party or parties actually responsible for the loss. Because defendants obtained a judgment against Mrs. Chadwick for the full amount they now seek from the plaintiff, they contend that the release signed by Mrs. Ammerman did not trigger the policy provision relied upon by plaintiff. Alternatively, argue defendants, if that provision *was* triggered by the settlement,

enforcement of such a provision would be contrary to Kansas public policy.

Because we agree with the arguments put forth by defendants, we will grant their motion for summary judgment and deny plaintiff's motion. Our reasoning is as follows.

In *Benson v. Farmers Insurance Co.,* 227 Kan. 833, 610 P.2d 605 (1980), the Kansas Supreme Court considered the enforceability of a clause that was virtually identical to the one at issue here. That provision read as follows: "This policy does not apply ... (1) to damages with respect to which any insured, ... shall, without written consent of the Company, make any settlement with any person or organization who may be legally liable therefor...." 227 Kan. at 834, 610 P.2d at 606. The court affirmed the trial court's ruling that such a clause was valid and enforceable. Although that clause appeared in an *uninsured* motorist policy, we have no reason to believe that a similar clause would not be enforced in the context of an *underinsured* motorist policy.

It is important, however, that the court's reasoning in *Benson* be examined carefully. There, an insured (Benson) executed a release to an insurance company (Casualty) that might have been liable for damages caused by the other motorist (Beers). Because Benson failed to receive the consent of his own insurance company (Farmers) prior to executing that release, Farmers refused to pay on Benson's uninsured motorist policy. The Kansas Supreme Court described the result as follows:

> In the present case, Benson agreed to release Casualty from possible liability if the defendant Beers was found responsible for the accident. Thus, Farmers is limited in any attempt to recover payments made under its uninsured motorist provision to the defendant Beers alone. This represents a substantial impairment of Farmers' rights to subrogation.

227 Kan. at 839, 610 P.2d at 610. The court then concluded "that the exclusion from coverage because of a settlement by the insured without the consent of the insurer is reasonably intended to protect the insurer's right of subrogation, and is valid and enforceable." 227 Kan. at 838, 610 P.2d at 610.

As noted above, defendants have obtained a $200,000.00 judgment against Mrs. Chadwick. Because Allstate has already paid the $50,000.00 provided in Mrs. Chadwick's own insurance policy, $200,000.00 is the full extent to which plaintiff could conceivably be held liable under the $250,000.00 per person underinsured motorist policy issued to Mr. Ammerman. If plaintiff pays defendants this amount, plaintiff will be fully subrogated to defendants' claim against Mrs. Chadwick. K.S.A. 40–287. Thus, plaintiff's rights to subrogation have not been impaired. On the contrary, by proceeding to obtain the judgment against Mrs. Chadwick, defendants have *facilitated* those subrogation rights.

■ Because of this, one could plausibly say that the "RELEASE OF ALL CLAIMS" signed by Mrs. Ammerman was not even a "settlement" within the meaning of the underinsured motorist policy. Were we to find, however, that execution of the release effected a technical violation of the policy, we would still grant defendants' motion for summary judgment. Under the circumstances of this case, enforcement of that policy provision would be contrary to Kansas public policy. A provision in violation of Kansas public policy is "illegal and absolutely void." *Hunter v. American Rentals, Inc.,* 189 Kan. 615, 618, 371 P.2d 131, 133 (1962).

*Benson* is illustrative of this Kansas public policy. In that case, the Kansas Supreme Court approved of both the result and the "rationale" of the trial court. Much of the trial court's rationale is quoted in the supreme court opinion. A relevant portion of that rationale is as follows:

> By law, however, the insurer has subrogation rights against any person who may be liable for the tort committed against the insured. (K.S.A. 40–287). The exclusion clause forbidding settlements without consent is merely designed to protect that right. This en-

forcement of statutory rights by the use of an exclusionary clause cannot be viewed as contrary to *public policy requiring compensation to innocent persons injured by the tortious conduct of an uninsured motorist.* To be compensated under the policy, all the insured need do is establish liability of an uninsured motorist.... Once liability has been established, the insurer must pay. The insurer then can, assuming its subrogation rights remain unimpaired, press an action against both the tortfeasor and his purported insurance company to collect the judgment. This procedure allows for both *compensation to the innocent tort victim* and preservation of the insurance carrier's subrogation rights.

*Benson,* 227 Kan. at 837, 610 P.2d at 609 (emphasis added).

The Kansas public policy "requiring compensation to innocent persons injured by the tortious conduct of an [underinsured] motorist" *would* be violated if an insurer were allowed to refuse payment on an underinsured motorist policy even after its insured had established the liability of the underinsured motorist. Yet that is the result plaintiff seeks. Because we believe that the Kansas courts would reject such an argument, we will grant defendants' motion for summary judgment.

Although our disposition of defendants' motion for summary judgment has rendered plaintiff's motion moot, we feel compelled to address one argument raised in plaintiff's motion. Plaintiff apparently contends that reformation of the release was improperly granted. This is because plaintiff believes that Mrs. Ammerman's true intent in signing the release was to relieve Mrs. Chadwick of all liability in excess of the $50,000.00 to be paid by Allstate. If so, then plaintiff's subrogation rights *were* impaired and the policy provision should properly be enforced.

■ The problem with this argument is that it requires a collateral attack on the state court judgment granting the reformation. As a federal court, we must afford state court judgments the same preclusive effect as would courts of that state. *Eaton v. Weaver Manufacturing Co.,* 582 F.2d 1250, 1256 n. 8 (10th Cir.1978). Clearly, plaintiff could not have challenged the reformation order in a Kansas state court.

■ As a corollary to this argument, plaintiff contends that the reformation order is fatally defective because it occurred at a hearing of which plaintiff received no notice. Plaintiff makes no showing, however, that nonparties to a settlement agreement are entitled to notice of a hearing at which that agreement might be reformed. We thus see no error in the state court's action.

In any event, plaintiff's argument is purely academic. Even assuming the parties intended to release Mrs. Chadwick of all liability in excess of $50,000.00, Mrs. Chadwick chose not to raise the release as a defense in the subsequent state court action. Rather, she confessed judgment for $200,000.00—thus leaving herself open to execution on that judgment by the defendants or, through statutory subrogation, by the plaintiff. Again, then, plaintiff can make no showing whatever of any prejudice.

Among the items of relief prayed for in defendants' counterclaim is prejudgment interest. The relevant Kansas prejudgment interest rule is found at K.S.A. 16–201. *See Mitchelson v. Travelers Insurance Co.,* 229 Kan. 567, 571, 629 P.2d 143, 146 (1981). It provides that:

Creditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due; for money lent or money due on settlement of account, from the day of liquidating the account and ascertaining the balance; ....

"A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same become definitely ascertainable by mathematical computation." *Johnson v. General Motors Corp.,* 233 Kan. 1044, 1053, 668 P.2d 139, 146 (1983).

In this case, defendants' claim against plaintiff became liquidated on March 20, 1985. On that date, the Kansas state court found that Mrs. Chadwick was liable to defendants in the amount of $200,-000.00. In conjunction with plaintiff's knowledge that Mrs. Chadwick's insurance coverage had been exhausted, this judgment placed plaintiff on notice of its potential liability in the amount of $200,000.00.

IT IS THEREFORE ORDERED that defendants' motions to dismiss (Docket Nos. 8 and 14) are denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (Docket No. 32) is denied.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Docket No. 23) is granted.

The clerk is directed to enter judgment in favor of defendants Gloria A. Ammerman, Dennis D. Ammerman, Ramona A. Roberts, and Leigh A. Ross, and against plaintiff Horace Mann Insurance Company, in the amount of $200,000.00, plus prejudgment interest at the rate of 10% per annum from and after March 20, 1985, plus defendants' costs in this action.