951 F.2d 1262
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Michael D. YOUNG, Plaintiff-Appellant and Cross-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Defendant-Appellee and Cross-Appellant.
 Nos. 91-3009, 91-3038.
 United States Court of Appeals, Tenth Circuit.
 Jan. 3, 1992.
 
 Before STEPHEN H. ANDERSON, TACHA and BRORBY, Circuit Judges.
 
 
 1
 ORDER AND JUDGMENT*
 
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 This case requires us to decide whether settlements entered into by the defendant's insured bars the insured from collecting uninsured motorist benefits from the defendant. On defendant's motion for summary judgment, the district court found in favor of the insured, holding that because the settlements occurred after the expiration of the two year statute of limitations for tort actions, the defendant had forfeited its ability to pursue its subrogation rights and thus the settlements were not a bar to the insured's recovery. Alternatively, the court held that the defendant had failed to show any prejudice from the settlements. Because we disagree with these conclusions, we reverse the district court on the issue of the defendant's obligation to pay uninsured motorist benefits. In addition to its judgment regarding uninsured motorist benefits, the district court declined to award attorney's fees to the insured and held that no fiduciary relationship existed between the insured and the defendant. We affirm the district court on these latter issues.
 
 
 4
 This lawsuit stems from a September 1985 automobile accident in which the plaintiff-insured, Michael D. Young, was injured when a car driven by Aquinaldo King failed to stop for a red light and struck him. The car was owned by Starla J. Garrett who was insured by Ranger Insurance Company. Mr. Young was insured by defendant State Farm.
 
 
 5
 Mr. Young sued Mr. King and Ms. Garrett in separate actions in Kansas state court. Both actions were defended by Ranger. Sometime after suit was filed, Mr. Young notified State Farm of a potential claim for underinsured or uninsured motorist (UM) benefits under his State Farm policy. State Farm informed Mr. Young's attorney that it did not wish to intervene in the state court actions, but that it would await the outcome of the lawsuits and then evaluate Mr. Young's underinsured or uninsured motorist claim.
 
 
 6
 In April 1988, the state district court entered a default judgment against Mr. King in the amount of $35,000. Young v. King, No. 87 C 4243, Journal Entry of Judgment at 2 (Kan.Dist.Ct. April 20, 1988). This judgment was entered after Mr. Young had signed an agreement whereby he agreed not to execute upon the personal assets of Mr. King in exchange for a promise that no evidence in connection with Mr. Young's injury would be introduced at trial except the evidence specifically noted in the agreement. App. to Brief of Mr. Young at 169. The agreement further stated that:
 
 
 7
 Plaintiff will make demand upon Ranger Insurance Company for payment of any judgment by reason of its policy of insurance issued to Starla J. Garrett.... Plaintiff will not otherwise attempt to levy execution or attach the assets of Ranger Insurance Company for satisfaction of any judgment.
 
 
 8
 Id. at 2.
 
 
 9
 In a Journal Entry of Dismissal with Prejudice, also dated April 20, 1988, the district court in the suit against Ms. Garrett, dismissed the action against her with prejudice noting that the parties had informed the court the action had been settled.[1] Under the terms of the settlement, Mr. Young was paid $10,000; in return, he released Ms. Garrett and Ranger from any claims arising from the accident. State Farm did not consent to either of these settlements.
 
 
 10
 With regard to State Farm's subrogation rights, Mr. Young's policy provided that:
 
 
 11
 c. Under uninsured motor vehicle coverage:
 
 
 12
 (1) we are subrogated to the extent of our payments to the proceeds of any settlement the injured person recovers from any party liable for the bodily injury.
 
 
 13
 (2) if the person to or for whom we have made payment has not recovered from the party at fault, he or she shall:
 
 
 14
 (a) keep these rights in trust for us;
 
 
 15
 (b) execute any legal papers we need; and
 
 
 16
 (c) when we ask, take action through our representative to recover our payments.
 
 
 17
 Supp.App. of State Farm at 18.
 
 
 18
 The policy also contained an exclusion against coverage where the insured prejudices these rights:
 
 THERE IS NO COVERAGE:
 
 19
 1. FOR BODILY INJURY TO ANY INSURED WHO OR ON WHOSE BEHALF ANY PERSON SHALL ACCEPT A SETTLEMENT OR SECURE A JUDGMENT THAT PREJUDICES OUR RIGHT TO RECOVER OUR PAYMENT. This does not apply if we have given our written consent to the settlement agreement or judgment.
 
 
 20
 Id. at 14. When State Farm learned of Mr. Young's settlement agreements with Mr. King, Ms. Garrett and Ranger, it disclaimed uninsured motorist coverage based on the terms of its policy.
 
 
 21
 This action, originally brought in state court and removed to the United States District Court for the District of Kansas, is a suit by Mr. Young against State Farm disputing State Farm's refusal to pay uninsured motorist benefits. On cross motions for summary judgment, the district court held that the exclusion noted above did not relieve State Farm of its obligation to pay UM benefits. Young v. State Farm Mut. Auto. Ins. Co., No. 88-1725-K, Memorandum Order at 6 (D.Kan. July 9, 1990) (District Court Order). State Farm appeals this ruling. The court further held that there was no fiduciary relationship between State Farm and Mr. Young and that Mr. Young was not entitled to attorney's fees under Kan.Stat.Ann. § 40-256 (1990). Mr. Young takes exception to the latter two conclusions. We will address the issues in order.
 
 Operation of the Policy Exclusion
 
 22
 In analyzing this question, the district court acknowledged Benson v. Farmers Ins. Co., 227 Kan. 833, 610 P.2d 605 (1980), in which the Supreme Court of Kansas "recognized that a similar settlement exclusion barred an uninsured motorist claim by an insured who had previously entered into a settlement agreement with the tortfeasor's insurance carrier." District Court Order at 4. The district court, however, reasoned further that Benson "is predicated on the existence of facts which indicate 'a substantial impairment' of the insurer's right of subrogation." Id. at 5. In contrast, the district court found that here State Farm had forfeited its ability to pursue its subrogation rights because the settlement occurred after the two year statute of limitations for tort actions in Kansas had expired. Therefore, it reasoned, State Farm did not retain "an interest which is subject to substantial prejudice by its insured's settlement with an alleged tortfeasor." Id. While noting that State Farm's right to intervene is voluntary, id., the district court concluded that "where the carrier has failed to either intervene or initiate an independent action within the limitations period, it has lost the right to rely on policy exclusions which depend on the existence of a substantial impairment of its subrogation rights." Id. at 6.
 
 
 23
 Alternatively, the district court held that because State Farm had failed to prove that Mr. King had any assets or that the Ranger policy provided coverage for him, it had failed to demonstrate that the settlement agreements had prejudiced its rights "in any meaningful way." Id. After our de novo review of this question of law, Northern Natural Gas Co. v. Grounds, 931 F.2d 678, 681 (10th Cir.1991), we respectfully disagree with the district court and conclude that the settlements entered into by Mr. Young did prejudice State Farm's subrogation rights, thus relieving State Farm of its obligation to pay UM benefits.
 
 
 24
 In Benson, 610 P.2d 605, the Supreme Court of Kansas construed a policy exclusion markedly similar to the one at issue. There, the insured, after filing a tort action, settled with the tortfeasor's insurer, Casualty Reciprocal Exchange, and agreed not to attempt to collect any judgment from Casualty. Id. at 607. The insured did not get written consent to the settlement from his own carrier. Id. at 606.
 
 
 25
 The court upheld the exclusionary clause, reasoning that the insurer had subrogation rights arising under Kansas statute and that the clause merely served to protect those rights. Id. at 609. The court explained that once the liability of the uninsured motorist was established, "the insurer then can, assuming its subrogation rights remain unimpaired, press an action against both the tortfeasor and his purported insurance company to collect the judgment." Id.
 
 
 26
 In Benson there was some question as to whether Casualty was, in fact, the tortfeasor's insurer. The court cited with approval the trial court's view that this problem did not prevent Mr. Benson's insurer from prevailing: "[w]hether Casualty is in fact the defendant's insurer is now academic; they are no longer obligated to pay any judgment arising from this action." Id.
 
 
 27
 The operation of a similar exclusion was later considered in Bartee v. R.T.C. Transp., Inc., 245 Kan. 499, 781 P.2d 1084 (1989). In Bartee, the court refused to allow the clause to exonerate the insured's carrier from paying uninsured motorist benefits where the settlement was with the turnpike authority and the contractor who designed and maintained the roadway at the scene of an accident. Id. at 1085-86, 1097. The court noted that the turnpike authority and the contractor were not uninsured motorists but, instead, were third-party tortfeasors. Id. at 1097. Because the settlement did not interfere with "the ability of the insurer to recover from the tortfeasor causing the insurer to provide uninsured motorist coverage," the attempted exclusion failed. Id. at 1099.[2]
 
 
 28
 The district court in the case at bar acknowledged Benson and Bartee and then went on to conclude that because the statute of limitations for tort actions had expired State Farm did not have any subrogation rights prejudiced by Mr. Young's actions. In its Memorandum Order in response to State Farm's motion for reconsideration, the court cited Farmers Ins. Co. v. Farm Bureau Mut. Ins. Co., 227 Kan. 533, 608 P.2d 923 (1980), and Kirtland v. Tri-State Ins. Co., 220 Kan. 631, 556 P.2d 199 (1976), for the proposition that "an insurer's right of subrogation against a tortfeasor is subject to the two-year limitations period of K.S.A. 60-513." Young v. State Farm Mut. Auto. Ins. Co., No. 88-1725-K, Memorandum Order at 2 (D.Kan. July 31, 1990). We respectfully disagree that either of these cases support that proposition.
 
 
 29
 In Farmers, Farmers had paid its insured personal injury protection (PIP) benefits after an auto accident. The insured then hired an attorney to represent him in his claim against the alleged tortfeasor and his insurer, Farm Bureau. Id. at 925. There is no indication in the opinion that a tort suit was ever filed. The insured then settled with Farm Bureau and released the alleged tortfeasor. Id. When Farmers filed suit against Farm Bureau to recover the personal injury protection benefits it had paid its insured, the court held that the two year tort statute of limitations barred its recovery. Id. at 927-28. The court noted that "[a]ny tort action brought by either the injured person or his PIP insurer against the tortfeasor or the liability insurer pursuant to K.S.A. 40-3113[a](c)[3] is limited by K.S.A. 60-513(a)(4) [the statute of limitations for negligence actions] to two years from the date of the injuries." Id. at 927.
 
 
 30
 While this law applies to situations where no underlying tort action has been filed to determine ultimate liability prior to the tolling of the statute of limitations, in the case at bar, the tort action had been timely filed and concluded with a judgment entered against Mr. King. No further lawsuit was necessary on the part of State Farm to establish its right to collect on that judgment. The original tort suit against Mr. King established his liability and Mr. Young's damages; State Farm's potential subrogation interest was in Young's existing judgment against King, Young v. King, No. 87 C 4243 (Kan.Dist.Ct. April 20, 1988), not in Young's tort claim against him. That claim was already completely adjudicated with entry of the tort judgment.
 
 
 31
 We recognize the maxim noted by the court in Farmers that "any defense which a wrongdoer has against the insured, such as the statute of limitations, is good against the insurer subrogated to the rights of the insured." Id. at 928. In the instant case, however, Mr. King had no statute of limitations defense against the insured because Mr. Young had timely filed his tort suit. Because State Farm stands in the shoes of its insured, it also succeeds to Mr. Young's right to be free from a statute of limitations defense.
 
 
 32
 Kirtland v. Tri-State Ins. Co., 556 P.2d 199, is similarly distinguishable from the case before us. In Kirtland, the plaintiff filed her tort suit against the offending driver within the two-year statute of limitations period. Id. at 200. The defendant, however, could not be found. More than two years after the accident, the plaintiff attempted to amend her complaint to add the defendant's insurer as a second party to the tort suit. Id. The court held that the two year statute of limitations controlled, thus barring plaintiff's action against the insurer. Id. at 201.
 
 
 33
 In Kirtland, as in Farmers, the court was not dealing with a situation where tort liability had already been determined and a judgment already entered against a tortfeasor. The two cases mean nothing more than that a tort suit, either directly against the tortfeasor or against the tortfeasor's liability carrier, must be filed within the two-year period by either the injured party or the UM carrier. Because the tort suit in this case was timely filed by Mr. Young, the two-year statute of limitations does not bar efforts by State Farm to collect on the judgment entered in that suit.
 
 
 34
 The statute under which State Farm claims subrogation rights is Kan.Stat.Ann. § 40-287. That statute provides, in pertinent part:
 
 
 35
 The policy or endorsement affording [uninsured motorist coverage] may further provide that payment to any person of sums as damages under such coverage shall operate to subrogate the insurer to any cause of action in tort which such person may have against any other person or organization legally responsible for the bodily injury or death because of which such payment is made, and the insurer shall be subrogated, to the extent of such payment, to the proceeds of any settlement or judgment that may thereafter result from the exercise of any rights of recovery of such person against any person or organization legally responsible for said bodily injury or death for which payment is made by the insurer.
 
 
 36
 The statute plainly allows subrogation in two different contexts: "to any cause of action in tort" which the insured may have, and "to the extent of such payment, to the proceeds of any settlement or judgment that may thereafter result." Id. (emphasis added). Only the first of these two avenues of relief, the prosecution of a tort claim, is subject to the two year tort statute of limitations. The second is subject to the Kansas procedural statutes on enforceability of judgments, Kan.Stat.Ann. §§ 60-2403-2407. Mr. Young cites no Kansas case which holds that uninsured motorist subrogation to collect an existing tort judgment is subject to the two-year statute of limitations.[4]
 
 
 37
 This case falls squarely within the reasoning of Benson, 610 P.2d at 609. "To be compensated under the policy, all the insured need do is establish liability of an uninsured motorist.... The insurer then can, assuming its subrogation rights remain unimpaired, press an action against both the tortfeasor and his purported insurance company to collect the judgment." Id Here, State Farm cannot avail itself of this remedy because its subrogation rights have been impaired by the settlements.
 
 
 38
 Mr. Young argues that State Farm should be penalized for its decision not to intervene in the state court tort actions. Indeed, the district court, although noting that intervention by an insurer is a voluntary right, Haas v. Freeman, 236 Kan. 677, 693 P.2d 1199, 1204 (1985), agreed with this point when it observed that "where the carrier has failed to either intervene or initiate an independent action within the limitations period, it has lost the right to rely on policy exclusions which depend on the existence of a substantial impairment of its subrogation rights." District Court Order at 5-6. We respectfully disagree. State Farm's failure to intervene did not waive any of its policy rights. The decision not to intervene simply meant that State Farm would be bound by the judgment in the tort actions. Haas, 693 P.2d at 1204; Horace Mann Ins. Co. v. Ammerman, 630 F.Supp. 114, 117 (D.Kan.1986).[5]
 
 
 39
 As an alternative basis for its decision, the district court noted that State Farm had not shown any prejudice to its rights because it "failed to provide any evidence that King had any assets, or that the Ranger policy provided coverage for King's actions." District Court Order at 6. While this proof may or may not have been available to State Farm, the exclusion in its policy operates if the insured prejudices the right to recover UM benefits. The clause is not restricted only to instances where actual recovery or successful recovery is jeopardized.
 
 
 40
 As in Benson, questions regarding whether Mr. King had assets and whether Ranger had coverage obligation are academic because of Mr. Young's release of Mr. King and his promise not "to levy execution or attach the assets of Ranger Insurance Company for satisfaction of any judgment."[6] State Farm's right to execute on the judgment through its statutory and policy rights of subrogation, as recognized in Benson, 610 P.2d at 609, and Horace Mann, 630 F.Supp. at 119, have been prejudiced by the settlements entered into by Mr. Young. It is the right at issue here, not the prospects of its successful exercise. For the reasons outlined above, State Farm is not obligated to provide UM coverage to Mr. Young. The judgment of the district court on this issue is reversed.
 
 Fiduciary Duty
 
 41
 Mr. Young cites no Kansas case holding that a carrier owes a fiduciary duty to its insured in an uninsured motorist setting. Indeed, the Supreme Court of Kansas has held that "the insured and insurer in a first party relationship have an adversary relationship, rather than a fiduciary relationship." Spencer v. Aetna Life & Casualty Ins. Co., 227 Kan. 914, 611 P.2d 149, 155 (1980). The judgment of the district court finding no fiduciary duty on the part of State Farm to Mr. Young is affirmed.
 
 Attorney's Fees
 
 42
 Because we reverse the district court regarding State Farm's obligation to pay UM benefits, State Farm is now the prevailing party, rendering it unnecessary for us to address Mr. Young's argument regarding the award of attorney's fees.[7]
 
 
 43
 Mr. Young requests that, in the event of reversal on the issue of UM benefits, we remand for determination of issues he contends were not resolved by the district court. Mr. Young identifies those issues as "State Farm's waiver of policy rights through its own inaction, and whether the agreement between King and Young constitutes a settlement or release as defined in the policy." Response Brief of Mr. Young at 17-18. We decline to remand for these purposes. The waiver issue was considered by the district court when it concluded that State Farm lost the right to rely on policy exclusions through its failure to either intervene or initiate an independent action within the limitations period. District Court Order at 6. We have reversed the district court on that issue. The district court similarly determined the second issue when it stated that "Young subsequently settled his claims with Garrett, Ranger, and King." Id. at 1. Because Mr. Young did not argue this second issue in his briefs on appeal, the issue is waived. Culver v. Town of Torrington, 930 F.2d 1456, 1461 (10th Cir.1991).
 
 
 44
 The judgment of the United States District Court for the District of Kansas is AFFIRMED IN PART and REVERSED IN PART and REMANDED to the District Court for further proceedings consistent with this order and judgment.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The Journal Entry of Judgment recites that the action had been settled on April 20, 1988; the actual document releasing Ms. Garrett and Ranger is dated May 10, 1988
 
 
 [2]
 The judgment upon which the plaintiff claimed UM benefits had already been reduced by the percentage of fault attributable to the third party tortfeasors. Id. at 1099
 
 
 [3]
 Kan.Stat.Ann. § 40-3113a(c) (1990) provides:
 In the event an injured person, such person's dependents or personal representative fails to commence an action against such tortfeasor within 18 months after the date of the accident resulting in the injury, such failure shall operate as an assignment to the insurer or self-insurer of any cause of action in tort which the injured person, the dependents of such person or personal representatives of such person may have against such tortfeasor for the purpose and to the extent of recovery of damages which are duplicative of personal injury protection benefits. Such insurer or self-insurer may enforce same in such person's own name or in the name of the injured person, representative or dependents of the injured person for their benefit as their interest may appear by proper action in any court of competent jurisdiction.
 
 
 [4]
 Burke v. Schroth, 4 Kan.App.2d 13, 601 P.2d 1172 (1979), is inapposite. In that case, the original tort suit had been dismissed by agreement of the parties more than two years after the accident at issue. The court noted in dicta that the insurance company had no recourse against the tortfeasors because the tort statute of limitations had run. Id. at 1174. The court cited, with approval, cases from other jurisdictions holding that "the right of subrogation is lost if the tort statute of limitations has run against the insured under the theory that the right of subrogation is purely derivative as the insurer succeeds only to the rights of the insured." Id. at 1175. While the statute of limitations in Burke for a tort suit had expired before a judgment was entered upon which the UM insurer could execute, such is not the case here. This tort action was timely filed and an enforceable judgment was entered
 
 
 [5]
 State Farm's decision not to intervene did not imply, as Mr. Young argues, that State Farm had concluded its subrogation rights to be of no value
 
 
 [6]
 The promise of Mr. Young to "make demand upon Ranger Insurance Company for payment of any judgment by reason of its policy of insurance issued to Starla J. Garrett" is negated by his further promise to forego execution or attachment of Ranger's assets
 
 
 [7]
 Attorney's fees are authorized only in actions "in which judgment is rendered against [the] insurance company." Kan.Stat.Ann. § 40-256