(935 P.2d 1067)
No. 76,210

Malissa K. Dalke, *Appellant*, v. Allstate Insurance Company, *Appellee.*

Opinion filed April 4, 1997.

*Frank C. Weidling,* of Weidling & Weidling, of Kansas City, for appellant.

*F. Russell Peterson,* of Law Offices of Bradley McTavish, of Independence, Missouri, for appellee.

Before Royse, P.J., Wahl, S.J., and Steven R. Becker, District Judge, assigned.

Wahl, J.: Malissa K. Dalke appeals from the district court's granting of summary judgment to Allstate Insurance Company (Allstate) in her action to recover underinsured motorist benefits arising out of an automobile accident.

Dalke was a passenger in an automobile driven by Lisa Madden, which was involved in an accident on June 25, 1993. Madden was insured by American Standard Insurance Company of Wisconsin (American) with liability limits of $25,000. Dalke was insured by Allstate with underinsured motorist limits of $50,000.

American, on behalf of Madden, offered Dalke its policy limit of $25,000 as settlement. Dalke agreed to accept the offer on or about April 25, 1995. The settlement included a release of the tortfeasor, Madden. A provision was added by Dalke's counsel to the settlement agreement specifically reserving Dalke's right to pursue underinsured motorist benefits.

After settling with American, Dalke sought to recover underinsured motorist benefits from Allstate pursuant to her contract for insurance. Allstate sought and was granted summary judgment based on Dalke's failure to follow the procedure set forth in K.S.A. 40-284(f).

The insurance policy issued to Dalke by Allstate contained the following provision under exclusions:

**"Exclusions—What is not covered**
**Allstate** will not pay any damages an insured person is legally entitled to recover because of:

. . . .

"3. **bodily injury** to any person who makes a settlement without **our** written consent."

This appeal arises from the district court's grant of a summary judgment, upon which this court's standard of review is well documented.

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]" *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

There is no factual dispute in the instant case, leaving this court purely a question of law upon which our review is unlimited. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

K.S.A. 40-284(f) provides in pertinent part:

"An underinsured motorist coverage insurer shall have subrogation rights under the provisions of K.S.A. 40-287 and amendments thereto. If a tentative agreement to settle for liability limits has been reached with an underinsured tortfeasor, written notice must be given by certified mail to the underinsured motorist coverage insurer by its insured. . . . Within 60 days of receipt of this written notice, the underinsured motorist coverage insurer may substitute its payments to the insured for the tentative settlement amount. The underinsured motorist coverage insurer is then subrogated to the insured's right of recovery to the extent of such payment and any settlement under the underinsured motorist coverage. If the underinsured motorist coverage insurer fails to pay the insured the amount of the tentative tort settlement within 60 days, the underinsured motorist coverage insurer has no right of subrogation for any amount paid under the underinsured motorist coverage."

Dalke argues that 40-284(f) does not deny coverage to her unless Allstate can demonstrate that it was prejudiced by her failure to preserve its subrogation rights. We pause to point out that there is no provision in the statute requiring Allstate to demonstrate prejudice.

Interpretation of a statute is a question of law. *State ex rel. Stephan v. Board of Seward County Comm'rs*, 254 Kan. 446, 448, 866 P.2d 1024 (1994).

"When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Martindale v. Tenny*, 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992). This court presumes that the legislature does not intentionally enact useless or meaningless legislation. *City of Olathe v. Board of Zoning Appeals*, 10 Kan. App. 2d 218, 221, 696 P.2d 409 (1985). "[A]ll statutes are to be so construed as to sustain them rather than ignore or defeat them; to give them operation if the language will permit." *Martindale v. Tenny*, 250 Kan. 621, Syl. ¶ 4.

Dalke points out that there are no enumerated consequences for failure to follow the notification procedure of 40-284(f). That is true. Dalke also notes that failure of an insured to notify its

insurer of a proposed settlement is not one of the listed exceptions to coverage found in K.S.A. 40-284(e). That is also true, but 40-284(e)(5) deals with failure by an insured to notify the insurance carrier of the filing of a lawsuit, which is not an issue in this case. Dalke further argues that the legislature could have specifically provided for exclusion if it had intended such a penalty. That cannot be denied.

" 'One of the more common rules of statutory interpretation is that expressed in the Latin maxim *expressio unius est exclusio alterius, i.e.*, the mention or inclusion of one thing implies the exclusion of another. This rule may be applied to assist in determining actual legislative intent which is not otherwise manifest, although the maxim should not be employed to override or defeat a clearly contrary legislative intention. [Citations omitted.]' " *State v. Luginbill*, 223 Kan. 15, 20, 574 P.2d 140 (1977).

Allstate maintains that K.S.A. 40-284(e) applies to uninsured motorist coverage, and the language of 40-284(f) makes it clear that section applies to underinsured motorist exclusions and limitations. K.S.A. 40-284 separates uninsured and underinsured motorist coverage in some instances, although both are included in the statute. See *Kansas Farm Bur. Ins. Co. v. Miller*, 236 Kan. 811, 819-20, 696 P.2d 961 (1985); *Haas v. Freeman*, 236 Kan. 677, 682, 693 P.2d 1199 (1985). Neither of these arguments is particularly impressive, but certainly the language of 40-284(f) contains no specific consequence to the insured for failure to comply with notification to the insurer of a settlement.

*Benson v. Farmers Ins. Co.*, 227 Kan. 833, 610 P.2d 605 (1980), involved an unapproved settlement between Benson and an uninsured motorist. The Farmers policy specifically excluded such a settlement. The validity of the exclusion clause was challenged, and the trial court upheld the exclusion.

" 'By law, however, the insurer has subrogation rights against any person who may be liable for the tort committed against the insured. (K.S.A. 40-287). The exclusion clause forbidding settlements without consent is merely designed to protect that right. This enforcement of statutory rights by the use of an exclusionary clause cannot be viewed as contrary to public policy requiring compensation to innocent persons injured by the tortious conduct of an uninsured motorist. To be compensated under the policy, all the insured need do is establish liability of an uninsured motorist. . . . Once liability has been established, the insurer must pay. The

insurer then can, assuming its subrogation rights remain unimpaired, press an action against both the tortfeasor and his purported insurance company to collect the judgment. This procedure allows for both compensation to the innocent tort victim and preservation of the insurance carrier's subrogation rights.' " 227 Kan. at 837.

This language supports the decision of the district court in the instant case, but we note that the specific exclusions of 40-284(e) were not codified until several years after *Benson* was decided.

In the case before us, the doctrine of *expressio unius est exclusio alterius* comes into conflict with the obvious legislative intent of allowing insurance companies the opportunity to preserve their subrogation rights in 40-284(f). The fundamental rule of statutory interpretation is that the intent of the legislature governs. *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993). The Kansas federal district court ignored the lack of a specific exclusion for unapproved settlements in *Horace Mann Ins. Co. v. Ammerman*, 630 F. Supp. 114 (D. Kan. 1986). The *Ammerman* court did not allow the plaintiff insurance company to exclude Ammerman from coverage, but based the decision on the fact that the insured signed a release which preserved the insurer's subrogation rights and had obtained a judgment against the third party, establishing liability. 630 F. Supp. at 116-17. These unique facts are not present in the case before us. In dicta, the *Ammerman* court wrote that the exclusion would have been enforceable had the plaintiff's subrogation rights been impaired. 630 F. Supp. at 119.

In *Bartee v. R.T.C. Transportation, Inc.*, 245 Kan. 499, 781 P.2d 1084 (1989), the Supreme Court addressed the question of whether an insured's settlement with third-party tortfeasors could activate an insurer's exclusion for settlement of claims without notice to the insurer. The *Bartee* court wrote that "policy provisions excluding uninsured motorist coverage for unauthorized settlements are limited to settlements that jeopardize the ability of the insurer to recover from the tortfeasor causing the insurer to provide uninsured motorist coverage." 245 Kan. at 521-22. This was not the issue directly before the court, and the question of the lack

of a specifically enumerated exclusion in 40-284(e) was not addressed.

The lack of a specifically stated consequence in 40-284(f) is the problem facing this court. Determination of whether statutory language is mandatory or directory was discussed in *State v. Deavers*, 252 Kan. 149, 167, 843 P.2d 695 (1992), *cert. denied* 508 U.S. 978 (1993):

> "Whether language in a statute is mandatory or directory is to be determined on a case-by-case basis and the criterion as to whether a requirement is mandatory or directory is whether compliance with such requirement is essential to preserve the rights of the parties. [Citation omitted.] In determining whether a legislative provision is mandatory or directory, it is a general rule that where strict compliance with the provision is essential to the preservation of the rights of parties affected and to the validity of the proceeding, the provision is mandatory, but where the provision fixes a mode of proceeding and a time within which an official act is to be done, and is intended to secure order, system, and dispatch of the public business, the provision is directory. Factors which would indicate that the provisions of a statute or ordinance are mandatory are: (1) the presence of negative words requiring that an act shall be done in no other manner or at no other time than that designated, or (2) a provision for a penalty or other consequence of noncompliance. [Citation omitted.]"

While there is no provision or penalty specifically provided for noncompliance with 40-248(f), the use of the words "shall" and "must" is a strong legislative mandate, and Dalke's noncompliance with the notice provision did result in the loss of Allstate's subrogation rights.

We are aware that public policy favors awarding injured motorists appropriate insurance benefits. The uninsured and underinsured motorist statutes are remedial in nature and should be liberally construed to provide broad protection to the insured against all damages resulting from bodily injuries sustained by the insured from an automobile accident involving damages caused by an uninsured or underinsured vehicle. *Rich v. Farm Bur. Mut. Ins. Co.*, 250 Kan. 209, 215, 824 P.2d 955 (1992). The Supreme Court has held that coverage provisions are to be liberally construed and exclusion or avoidance of coverage is to be narrowly construed. See, *e.g.*, *Stewart v. Capps*, 247 Kan. 549, 555, 802 P.2d 1226 (1990).

Here, plaintiff could very well have more damages than $25,000, which ideally would be covered.

The legislature enacted 40-284(f) in response to the dilemma of "potential legal entanglements inherent in resolving a claim for damages which exceed the liability limits of the negligent party's automobile liability policy." Report on Kansas Legislative Interim Studies to the 1986 Legislature, pp. 129, 133 (1985). This situation prevented either party from taking the initial step toward settling the claim. Report on Kansas Legislative Interim Studies, p. 133. The legislature's answer was to put the burden of delayed collection and economic hardship upon the underinsured liability insurer by forcing them to either match the settlement offer or forego their subrogation rights. See Scott, Kansas Uninsured and Underinsured Motorist Coverage Issues, p. 17 (1987). Dalke has derailed the process by failing to notify Allstate of her potential settlement with the tortfeasor and denying Allstate its subrogation rights.

Dalke directs us to *Brown v. USAA Cas. Ins. Co.*, 17 Kan. App. 2d 547, 840 P.2d 1203, *rev. denied* 252 Kan. 1091 (1992), in support of her position. In *Brown*, the insured's failure to bring suit against the tortfeasor within the 2-year statute of limitations period did not preclude collection of underinsured motorist benefits. This court ruled that there was no statutory requirement that the insured seek any recovery from the tortfeasor before seeking underinsured motorist benefits. The court recognized that this placed the insurer in a bad situation since its subrogation rights would be lost after the 2-year statute of limitations expired, but the insured would still be able to bring a contract action against the insurer.

*Brown* is distinguishable. The holding of *Brown* was that the insured had not violated the provision of 40-284(b). Brown was not obligated to bring action against the tortfeasor. In the instant case, Dalke has clearly violated the specific language of 40-284(f).

In *Sorensen v. Farmers Exchange*, 279 Mont. 291, 927 P.2d 1002 (1996), the Supreme Court of Montana ruled that the insured was not barred from collecting on the underinsured motorist policy unless the insurance company is able to demonstrate prejudice as a result of an unapproved settlement. Montana, however, appar-

ently does not have a statute similar to 40-284(f). There is no discussion of statutory law in *Sorenson*.

The insurer is given subrogation rights under 40-287, which are specifically recognized in 40-284(f). There is a public policy issue to be considered in this provision for recoupment against the tortfeasor rather than placing the burden entirely upon the insurer with the resulting increase in premiums to all insureds.

The Kansas Legislature has provided a simple procedural step for the insured to follow when a settlement offer is received. Dalke failed to follow the statutory requirements. This inaction on Dalke's part destroyed Allstate's subrogation rights.

K.S.A. 40-284(f) provides that the insurer *shall* have subrogation rights and that the insured *must* notify the insurer by certified mail of the tentative agreement for settlement. It then provides what the insurer may do to preserve its subrogation rights. This is very clear. The legislature was obviously cognizant of and concerned with the preservation of the insurer's right of subrogation and the benefits to the public emanating from the preservation of that right. They commanded the insured with the strong legislative *must* to notify the insurer of any possible settlement and provided that the insurer *shall* have subrogation rights if it substitutes its payment.

The failure of Dalke to notify Allstate of her settlement and her release of the tortfeasor, Madden, violated her statutory and contractual duty to Allstate. In doing so, she cut off Allstate's subrogation rights and must be held to have forfeited her right of recovery from Allstate under the underinsured motorist provisions of her policy. To hold otherwise would suggest meaningless legislation and would fail to give operation to the obvious intent of the legislature.

We find the holding in *Benson*, 227 Kan. at 837, to be applicable. The enactment of 40-284(e) several years after the ruling in *Benson* does not change the import of *Benson*. It could even be argued that 40-284(e)(5), providing for exclusion of coverage when the insured files suit against the uninsured motorist without notice to the insurance carrier, is indication that the legislature considered the issue of an undisclosed settlement covered in 40-284(f).

Finally, Dalke states that the release in question specifically conditioned her right to pursue her underinsured motorist benefits against Allstate, and argues that the release is voidable if her rights to pursue her underinsured motorist benefits are extinguished. This is a matter between Dalke and the underinsured motorist and is not properly before this court at this time.

The district court did not err in granting summary judgment to Allstate.

Affirmed.