**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 2 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

DONNA DAVIS,

       Plaintiff-Appellee,

v.

PRUDENTIAL PROPERTY AND
CASUALTY INSURANCE
COMPANY,

       Defendant-Appellant.

No. 97-3137
(D.C. No. 95-4190-DES)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **BARRETT**, and **BRISCOE**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-Appellee Donna M. Davis brought this action seeking an award of underinsured motorist benefits from her automobile insurance carrier, Defendant-Appellant Prudential Property and Casualty Insurance Company (Prudential). Prudential appeals from the district court's order which granted Ms. Davis's motion for summary judgment and awarded her $75,000 plus postjudgment interest.

In 1990, Ms. Davis was injured in an automobile accident. Prudential paid her $11,947.17 in personal injury protection (PIP) benefits as the result of the accident. On July 21, 1992, she sued Robert Bryant, the other driver, in Kansas state court. She provided timely notice of the suit to Prudential. By letter dated July 31, 1992, Prudential notified counsel for Ms. Davis that it did not intend to intervene in the suit against Mr. Bryant. Prudential did, however, file a notice of subrogation lien in the suit for its PIP benefits.

Mr. Bryant had only minimal automobile insurance coverage. By Spring 1993, he had reached a settlement with Ms. Davis. The settlement agreement called for Mr. Bryant to confess judgment in favor of Ms. Davis in the amount of $120,000, of which $25,000, his policy limit, would be paid to her by his insurance carrier. Ms. Davis further agreed with Mr. Bryant and his insurer not to execute on the remainder of the judgment. Mr. Bryant's carrier deposited $25,000 into the registry of the court.

On May 21, 1993, counsel for Ms. Davis notified Prudential by certified mail of the proposed settlement. Prudential received this notice on May 24. Two days later, on May 26, 1993, the district court signed a journal entry of judgment approving the settlement. Ms. Davis filed a "Motion for Order to Pay," seeking to have the $25,000 in the court registry released to her.

Before the funds were released, on July 23, 1993, Prudential took two further actions in furtherance of its interests. First, to protect its right of subrogation, it tendered $25,000 to Ms. Davis in replacement for the funds she was to receive from Mr. Bryant's carrier under the settlement agreement. See Kan. Stat. Ann. § 40-284(f). Prudential made its tender in the form of a check made payable to Ms. Davis and Prudential. Ms. Davis rejected the tendered payment, on the basis that it was made payable jointly with Prudential rather than solely to herself.

Second, Prudential filed a motion to intervene in the Kansas suit, asserting that Ms. Davis had received PIP benefits from Prudential and had made a claim on Prudential for underinsured motorist benefits. The Kansas district court denied Prudential's motion to intervene as untimely. The Kansas Court of Appeals affirmed this determination, and the Kansas Supreme Court denied Prudential's petition for review.

Ms. Davis subsequently filed this action against Prudential, seeking to recover the difference between the amount she received under the settlement in the Kansas action and her uninsured motorist benefit. The district court granted summary judgment for Ms. Davis on the basis that she had properly established Prudential's liability under her policy.

"We review a district court's grant or denial of summary judgment de novo applying the same legal standard used by the district court pursuant to Fed. R. Civ. P. 56(c). When applying this standard, we examine the factual record in the light most favorable to the party opposing summary judgment." Belhomme v. Widnall, 127 F.3d 1214, 1216 (10th Cir. 1997).

Ms. Davis contends that she is entitled to summary judgment because she has a Kansas judgment awarding her $120,000 in damages, against which the tortfeasor's insurer paid its policy limits of $25,000, leaving her entitled to claim underinsured motorist benefits under her policy with Prudential. Prudential responds, first, that it is not bound by the Kansas judgment, and second, that Ms. Davis breached the terms of her policy and cannot recover under it. The record clearly demonstrates that Ms. Davis is entitled to summary judgment and an award of benefits under her policy, unless one of these objections precludes her recovery. We therefore consider each of Prudential's arguments in turn.

Prudential acknowledges the existence of the consent judgment in favor of Ms. Davis, but denies that the judgment has binding effect sufficient to establish its contractual liability in this action. Under Kansas law, an underinsured motorist carrier who elects not to intervene in its insured's suit against an alleged tortfeasor is bound by any judgment obtained establishing the tortfeasor's liability.[1] See Ramsey v. Chism, 817 P.2d 198, 200 (Kan. 1991). This principle applies equally to judgments based upon settlement agreements. See Guillan v. Watts, 822 P.2d 582, 590 (Kan. 1991).

Prudential argues that it is not so bound, because it elected to intervene, but the Kansas court denied its motion for intervention. Kansas law requires that a party seeking to intervene make "timely application." Kan. Stat. Ann. § 60-224(a). It follows that at the point when intervention can no longer be timely made, it disappears as an option. If an insurer waits until after this point to intervene, an election not to intervene has been made by implication. Prudential's failure to pursue timely intervention therefore bound it to the consent judgment obtained against Mr. Bryant. See Guillan, 822 P.2d at 590.

---

[1] Prudential is not, of course, "bound by" the judgment against Bryant within the technical meaning of that term. Rather, the issue is whether the judgment against Bryant triggers Prudential's contractual obligation to pay underinsured motorist benefits. See Pickens v. Allstate Ins. Co., 843 P.2d 273, 277 (Kan. Ct. App. 1992) (discussing meaning of term "bound by" within underinsured motorist liability context).

Prudential next argues that it should be released from liability on its policy with Ms. Davis because she breached the policy by impairing Prudential's subrogation rights. An uninsured motorist carrier's subrogation rights are governed by § 40-284(f) of the Kansas Statutes. Under this provision, an insured who has reached a tentative settlement agreement with an underinsured tortfeasor must give her underinsured motorist carrier written notice of the proposed settlement. See id. The carrier has sixty days from the date it receives such notice to substitute its payment to the insured for the tentative settlement amount. See id. If the carrier fails to substitute its payment, it has no right of subrogation. See id.

Prudential asserts, first, that Ms. Davis impaired its subrogation rights by failing to give Prudential a full sixty-days' notice and opportunity to substitute payment before judgment was entered. The district court concluded that Prudential destroyed its own right of subrogation by waiting until the last possible day to make substitutionary payment, and by then making payment jointly to itself and Ms. Davis. Therefore, the district court reasoned, it was not Ms. Davis's failure to give notice which resulted in Prudential's loss.

Prudential responds that it did not impair its own right of subrogation. Prudential asserts it was justified in making out a joint check in order to protect its right to reimbursement for PIP benefits paid. Nothing in § 40-284(f) allows an

-6-

insurer to include itself as a payee for the substitutionary payment, however, even if it has a PIP lien.

Moreover, the Kansas courts determined that Prudential did not have a right for reimbursement for PIP benefits. Prudential argues that it could not have foreseen this result and was therefore entitled to protect its interests prior to obtaining a court ruling on the PIP issue. Prudential cites no authority for this position, however, which seems inconsistent with the statutory requirement that the insurer pay its insured the amount of the tentative tort settlement within sixty days. We conclude that the district court correctly decided that Prudential lost its right to subrogation by failing to properly substitute payment within the sixty-day time period.

Prudential contends, however, that regardless of its own inaction, we should focus on Ms. Davis's failure to give it sixty-days' notice before the settlement was approved, because her omission independently impaired its right of subrogation.[2] We agree with the district court that Prudential was not prejudiced in asserting its subrogation rights by any foreshortening of the substitutionary period. While § 40-284(f) does not require Prudential to

---

[2]    The district court found that the Kansas district court entered the order approving the settlement agreement prematurely, by mistake. Neither the court, nor the parties, has pointed us to any facts in the state court record which support this finding, and our analysis here does not depend on it.

affirmatively demonstrate prejudice from lack of adequate notice, see Dalke v. Allstate Insurance Company, 935 P.2d 1067, 1069 (Kan. Ct. App. 1997), Ms. Davis's actions must at least have "derailed the process" or "den[ied Prudential] its subrogation rights," id. at 1071.

Prudential has admitted that it was not aware of the entry of the judgment until after the sixty days had passed. On the sixtieth day after it received notice, Prudential made its substitutionary check payable jointly rather than to Ms. Davis alone. Prudential makes no showing that it did not have sixty days of actual notice, or that it would have acted differently had the judgment not been entered until the sixty-first day after it received notice. Unless the insured's conduct actually denies the insurer its subrogation rights, Kansas public policy, coupled with the remedial nature of its underinsured motorist statute, favors the award of appropriate benefits. See Dalke, 935 P.2d at 1071. We conclude that Ms. Davis did not lose her right to benefits through foreshortened notice.

Prudential next contends that Ms. Davis impaired its right of subrogation under § 40-284(f) by entering into a settlement agreement containing a covenant not to execute. Prudential claims that § 40-284(f) forbids a settlement containing a covenant not to execute, because of its effect on the insurer's right of subrogation. The statute contains no express prohibition on settlement

-8-

agreements containing such covenants. Prudential has failed to show that Ms. Davis breached the statute by entering into such an agreement.[3]

Finally, Prudential claims that Ms. Davis breached the provisions of her own policy by failing to obtain Prudential's consent to the settlement. Section 40-284(f) prescribes specific procedural notice requirements with which an insured contemplating settlement must comply. These procedures provide sufficient protection to the insurer from undisclosed settlements. Cf. Dalke, 935 P.2d at 1072 (noting that "the legislature considered the issue of an undisclosed settlement covered in 40-284(f).") To the extent Prudential's policy provisions do no more than require compliance with the statute, we have already determined that Ms. Davis's noncompliance does not bar her recovery in this case. To the extent Prudential's policy attaches additional procedural requirements on the settlement process, in contravention of the statutorily-prescribed process, those requirements will not be enforced. Cf. Stewart v. Capps, 802 P.2d 1226, 1230

---

[3] The statute does state that once an insurer makes substituted payment, it is entitled to subrogation. Therefore, covenants not to execute may be inconsistent with the statute and unenforceable against the insurer. Had Prudential properly substituted payment, it could unquestionably have made this argument, either in the Kansas court or in the federal district court. Having failed to bring itself within the ambit of the statute by complying with this necessary precondition, however, Prudential cannot now be heard to argue that the settlement agreement impaired statutory rights which it did not in fact possess.

(Kan. 1990) (finding limit-of-liability provision in policy preempted by uninsured motorist statute).[4]

The judgment of the United States District Court for the District of Kansas is AFFIRMED. Prudential's motion to certify question to the Kansas Supreme Court is DENIED.

Entered for the Court

Wade Brorby
Circuit Judge

---

[4] Prudential cites <u>Benson v. Farmers Ins. Co.</u>, 610 P.2d 605 (Kan. 1980), for the proposition that a "consent to settle" requirement is not in contravention of the underinsured motorist statute. <u>Benson</u> is distinguished from this case in that it dealt with an uninsured motorist coverage provision which did not contain a specific set of procedures which the insured had to comply with in order to protect the insurer's subrogation rights.