(995 P.2d 885)
No. 81,001

GARY D. ELLIOTT, *Appellant*, v. FARM BUREAU INSURANCE COMPANY, INC., *Appellee.*

Opinion filed December 30, 1999.

*John M. Parisi*, and *Steven G. Brown*, of Shamberg, Johnson & Bergman, Chartered, of Overland Park, for appellant.

*Todd N. Thompson*, of Thompson & Associates, of Lawrence, for appellee.

Before JUSTICE EDWARD LARSON, presiding, MARQUARDT, J., and JACK L. BURR, District Judge, assigned.

LARSON, J.: This appeal involves interpretation of the wage loss provisions of an automobile insurance contract. Gary D. Elliott appeals from the trial court's decision that his recovery from Farm Bureau Insurance Company, Inc., (Farm Bureau) is limited to 85%

of his loss of monthly earnings and from the reconsideration of an earlier ruling.

Elliott had purchased automobile insurance coverage from Farm Bureau. The policy provided for loss of earnings benefits to compensate for lost wages, with a limitation of "85% of loss of monthly earnings unless [the wage loss benefits were] required to be reported as gross earnings for Federal Income Tax."

Elliott was involved in an automobile accident and suffered one day's wage loss in the amount of $372.06. This claim was submitted to Farm Bureau, which paid 85% of the wage loss claimed, or $316.25. When Elliott insisted in writing that he was entitled to receive 100% of his wage loss, Farm Bureau disagreed and refused to pay more than the 85% offered. This litigation ensued.

Elliott's petition sought declaratory relief and damages and certification of a class for persons similarly situated. The petition confirmed the wage loss benefits were not federally taxable, but construed the Farm Bureau policy as meaning Elliott was entitled to all of his wage loss claim up to a maximum limit of 85% of his monthly earnings.

Farm Bureau moved for judgment on the pleadings, asserting that the Kansas Automobile Injury Reparations Act (KAIRA) and, specifically, K.S.A. 1998 Supp. 40-3103(b) provided that wage loss benefits not subject to federal tax must be limited to 85% of the insured's loss. Farm Bureau argued that *Eidemiller v. State Farm Mut. Auto. Ins. Co.*, 261 Kan. 711, 933 P.2d 748 (1977), required application of the mandatory limitation of the statute regardless of whether the policy included the statutory language.

Elliott responded that *Eidemiller* was distinguishable because the mandatory statutory exclusion language had been completely absent from the policy in that case. Elliott claimed that *Howard v. Farmers Ins. Co.*, 5 Kan. App. 2d 499, 619 P.2d 160, *rev. denied* 229 Kan. 670 (1981), was more applicable in its holding that an insurer is liable to its insured under a policy which grants rights in excess of those required by statute.

The trial court denied the request for judgment on the pleadings without actually considering the contested issue of whether Farm Bureau's policy provided greater coverage than the statute man-

dated. However, in an attempt to certify for interlocutory appeal the *Eidemiller/Howard* issue, the order denying the judgment on the pleadings was amended after a hearing to state that the policy terms provided greater coverage than the statute. The Court of Appeals denied the request for interlocutory review.

Thereafter, Farm Bureau's initial counsel withdrew and new counsel asked the trial court to reconsider the question of whether the Farm Bureau policy provided greater coverage than the statute. Farm Bureau noted that the interpretation of the policy language had never been briefed, argued to, or considered by the trial court, and argued the plain language of the policy clearly provided the same coverage as the statute. Elliott opposed the motion to reconsider. The trial court agreed that reconsideration was proper, stated it had not previously been asked to rule on the precise questions raised, and, in the interest of justice, granted the motion for reconsideration. The trial court then considered the wording of the policy, determined the same coverage was afforded in the policy as the statute required, and entered judgment for Farm Bureau, from which Elliott now appeals.

Elliott's argument that the trial court erred in reconsidering the central issue to this appeal is not convincing. Despite the earlier attempt to unduly simplify the issue by requiring either an *Eidemiller* or *Howard* resolution of this case, Farm Bureau had always contended that coverage did not exceed that required by the statute and it could not in any manner be estopped from continuing this argument. See *City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 158, 959 P.2d 894 (1998).

Elliott also argues that K.S.A. 60-260(b) did not authorize the trial court's action. K.S.A. 60-260(b)(6) allows the trial court to relieve a party from an order or judgment for "any other reason justifying relief from the operation of the judgment," which is precisely what the trial court did in this instance in holding that "[l]egal issues should be determined upon their own merits." The court went on to state: "Until this motion for reconsideration was filed, the court has never fully considered whether or not [Farm Bureau's] policy does indeed grant greater coverage than provided by the Kansas Statutes."

A trial court always has control of its proceedings until a final judgment is entered, and such judgment should be based on the true merits of the case. The trial court did not abuse its discretion in reconsidering the matter, and Elliott's arguments to the contrary are without merit.

The central issue to the appeal and Elliott's prime argument is that Farm Bureau's policy either clearly provided for greater coverage than 40-3103 or is, at the least, ambiguous with regard to the amount of wage loss coverage that is provided. Elliott argues any ambiguity should have been resolved in favor of himself as the policyholder.

Resolution of these issues requires construction of a written contract and statutory interpretation, which are questions of law over which an appellate court exercises unlimited review. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998) (statutes); *Farm Bureau Mut. Ins. Co. v. Horinek*, 233 Kan. 175, 177, 660 P.2d 1374 (1983) (insurance contracts).

A contract is ambiguous if it contains provisions or language of conflicting or doubtful meaning as suggested by a natural and reasonable interpretation of its language. *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 248 Kan. 657, 659, 810 P.2d 283 (1991). An insurance contract should be construed to give it the meaning that a reasonably prudent insured would understand the language to mean. *Farm Bur. Mut. Ins. Co. v. Winters*, 248 Kan. 295, Syl. ¶ 1, 806 P.2d 993 (1991). Where, however, an insurance contract is not ambiguous, the courts will not make another contract for the parties but will enforce the contract as written. *Old Hickory*, 248 Kan. at 659-60.

The statutory provisions of K.S.A. 1998 Supp. 40-3013 that are in issue in this appeal are as follows:

"(l) 'Monthly earnings' means: (1) In the case of a regularly employed person or a person regularly self-employed, $\frac{1}{12}$ of the annual earnings at the time of injury; or (2) in the case of a person not regularly employed or self-employed, or of an unemployed person, $\frac{1}{12}$ of the anticipated annual earnings from the time such person would reasonably have been expected to be regularly employed. In calculating the anticipated annual earnings of an unemployed person who has previously been employed, the insurer shall average the annual compensation of

such person for not to exceed five years preceding the year of injury or death, during which such person was employed."

"(b) 'Disability benefits' means allowances for loss of monthly earnings due to an injured person's inability to engage in available and appropriate gainful activity, subject to the following conditions and limitations: (1) The injury sustained is the proximate cause of the injured person's inability to engage in available and appropriate gainful activity; (2) subject to the maximum benefits stated herein, allowances shall equal 100% of any such loss per individual, unless such allowances are deemed not includable in gross income for federal income tax purposes, in which event such allowances shall be limited to 85%; and (3) allowances shall be made up to a maximum of not less than $900 per month for not to exceed one year after the date the injured person becomes unable to engage in available and appropriate gainful activity."

We must construe the terms of the above definitions together. See *State v. Le*, 260 Kan. 845, 847-48, 926 P.2d 638 (1996).

The words, "allowances" and "such allowances" in 40-3103(b) refer back to the beginning of that subsection, which states: "allowances for loss of monthly earnings." The wording "any such loss" refers to the "loss of monthly earnings."

The provision of 40-3103(b)(2) that states "such allowances shall be limited to 85%" must be construed by looking at the previous part of the same clause, and we find it means 85% of any such loss per individual. Because it is agreed that Elliott's income was not includable as gross income for federal income tax purposes, 40-3103(b) clearly means that his wage loss benefit is limited to 85% of his loss of monthly earnings, subject to the maximum of 40-3103(b)(3), which is not applicable here.

The 85% limitation is based on the sound policy that income tax savings attributable to the loss of income due to an injury are to be subtracted in calculating a person's net loss.

The above construction is not questioned by Elliott, who argues that Farm Bureau's policy is worded differently from the statute and provides greater coverage, and that he is entitled to the benefit of the policy language.

The personal injury protection portion of Farm Bureau's policy states:

"WHAT WE PAY

"We will pay in accordance with the Kansas Automobile Reparations Act for bodily

injury to an insured, caused by accident resulting from the ownership, maintenance or use of a motor vehicle, benefits for:

. . . .

2. Loss of Monthly Earnings. This covers the insured's loss of monthly earnings due to the insured's inability to work for money in an available and appropriate job.

"This is subject to:

"a. the bodily injury being the proximate cause of the insured's inability to work; and

"b. the maximum limit stated under your coverage symbol. Benefits are limited to 85% of loss of monthly earnings unless required to be reported as gross earnings for Federal Income Tax.

"Monthly Earnings are, in the case of an insured:

a. regularly employed or self-employed, ¹⁄₁₂ of the annual earnings at the time of the injury; or

b. not regularly employed or self-employed, or if unemployed, ¹⁄₁₂ of the anticipated annual earnings from the time the insured would reasonably have been expected to be regularly employed. If an unemployed insured was previously employed, we will average the insured's annual earnings for up to 5 years before the date of the accident to determine the anticipated annual earnings."

Elliott contends that the statement "[b]enefits are limited to 85% of loss of monthly earnings unless required to be reported as gross earnings for Federal Income Tax" means that the individual can recover all of his lost gross wages up to 85% of his monthly earnings. Based on this interpretation, Elliott argues he and all other Farm Bureau policyholders with the same policy are entitled to collect the amount of lost wages in an amount up to 85% of their monthly earnings, not simply 85% of the claim submitted. In making this argument, Elliott ignores the presence of the words "loss of" in the policy. The policy does not say "[b]enefits are limited to 85% of the individual's monthly earnings," but rather that they are limited to 85% of "loss of" monthly earnings.

In presenting his argument, Elliott poses several hypothetical applications of the two different interpretations of the policy language, using varying monthly earnings and wage loss numbers. We do not find these illustrations persuasive. We are dealing in this case with a wage loss of one day's wages in the amount of $372.06, and the amount of wage loss benefits to which Elliott is entitled is 85% of this amount, or $316.25.

This 85% limitation is the same as that found in 40-3103(b)(2). The policy expressly states the intention to pay benefits in accordance with the KAIRA, including benefits for loss of monthly earnings, and the 85% wage loss limitation is in accordance with the Act.

We do not consider the policy language ambiguous. The fact that Elliott contends the plain wording of the policy has a different meaning from that found by the trial court does not require a finding of ambiguity. We view the policy exactly as the trial court did when it stated:

"It appears to this court now, that the policy and statute agree with each other. The policy limits coverage to 85% of the loss of monthly earnings. The definition of monthly earnings does not provide any additional coverage. That definition provides for a basis for calculation. The plaintiff has interpreted the policy incorrectly. The court sees no specific language in the policy that states an insured should receive to 'up to 85% of his monthly earnings,' which is how the plaintiff views the policy."

The trial court correctly interpreted the provisions of the Farm Bureau insurance policy.

Affirmed.