(44 P.3d 1274)

No. 86,410

ANTHONY EDWARD MOLINA, *Appellant*, v. BENJAMIN CHRISTENSEN and WICHITA STATE UNIVERSITY, *Appellees*.

Opinion filed December 14, 2001.

*Daniel J. Sevart,* of Sevart & Sevart, of Wichita, and *Rand S. Wonio,* of Lane & Waterman, of Davenport, Iowa, for the appellant.

*William Scott Hesse,* assistant attorney general, and *Carla J. Stovall,* attorney general, for appellee Wichita State University.

Before RULON, C.J., LEWIS, J., and STEPHEN D. HILL, District Judge, assigned.

LEWIS, J.: Anthony Edward Molina sued Benjamin Christensen and Wichita State University (WSU) for injuries sustained prior to a regularly scheduled intercollegiate baseball game between WSU and the University of Evansville, Indiana (Evansville). Summary judgment was rendered on behalf of the defendants, who were held to be immune from liability under the recreational use exception to the Kansas Tort Claims Act (KTCA), K.S.A. 1999 Supp. 75-6104(o). The plaintiff appeals the decision of the trial court. We affirm.

The Evansville team had traveled to Wichita to play in a regularly scheduled baseball game against WSU. All matters relevant to this appeal took place at Rusty Eck Stadium in Wichita.

The injury to the plaintiff took place as he was standing either in or near the on-deck circle prior to the beginning of the baseball game. Defendant Christensen was pitching for WSU and was on the pitcher's mound warming up. At one point and for reasons not totally clear, Christensen threw a baseball at the head of the plaintiff and struck him on his head, causing serious injuries. The plaintiff then filed suit against WSU, alleging simple negligence on the part not only of Christensen but also on the parts of the manager

of the WSU team and one of its coaches. There is no doubt that the injury to the plaintiff was deliberate and unjustifiable.

Christensen maintained that his actions were motivated by instructions given to him by one of the WSU coaches. According to Christensen, his actions had something to do with keeping the batter from getting too close to home plate. The problem with that rationale is that under the facts shown, the game had not started, the plaintiff had every right to be where he was, and Christensen had no right whatsoever to be throwing a baseball anywhere near him.

Despite the defendants' unconscionable tactics, the plaintiff's petition alleged only simple negligence on the part of Gene Stephenson and Brent Kemnitz. Stephenson, as the manager, and Kemnitz, as one of the coaches, were both employees of WSU. WSU filed an answer to this petition and reserved the defense of immunity under the recreational use exception to the KTCA.

Things did not go smoothly procedurally. The plaintiff moved for partial summary judgment against WSU. WSU opposed that motion and argued that the plaintiff had failed to comply with Supreme Court Rule 141 (2000 Kan. Ct. R. Annot. 189) and sought sanctions against the plaintiff for failure to serve it with a copy of the resistance and memorandum in opposition filed by the plaintiff. After having set up this offensive strategy, WSU then moved for summary judgment based on immunity under the recreational use exception of K.S.A. 1999 Supp. 75-6104(o).

The trial court denied the plaintiff's motion for partial summary judgment. Although hotly contested, the trial court found that the plaintiff had not served copies of the resistence and memorandum in opposition upon defense counsel as required by Supreme Court Rule 141(b) and granted WSU's motions for sanctions. As a sanction, the trial court adopted WSU's statement of uncontroverted facts and granted immunity under K.S.A. 1999 Supp. 75-6104(o).

The plaintiff argues strongly that the trial court erred in holding that he failed to comply with Supreme Court Rule 141 and in adopting WSU's statement of uncontroverted facts. We disagree.

A trial court's ruling that a party opposing summary judgment is deemed to have admitted the movant's uncontroverted facts be-

cause of failure to follow Supreme Court Rule 141 rests within the sound discretion of the trial court. *Ruebke v. Globe Communications Corp.*, 241 Kan. 595, 604, 738 P.2d 1246 (1987).

"Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court. One who asserts the court has abused its discretion bears the burden of showing such abuse of discretion. [Citation omitted.]" 241 Kan. at 604.

Supreme Court Rule 141 requires timely filing and service on opposing counsel and governs summary judgment. It also provides a trial court with ample grounds for exercising its discretion in imposing sanctions to punish a party for failing to comply with the rule.

The plaintiff apparently mistakenly believes that the trial court was unaware that he filed his responsive memorandum within 21 days as required by Supreme Court Rule 141.

We disagree. It is evident from the record that the trial court was aware that the plaintiff did not serve a copy of his response on opposing counsel within the 21-day time period. At the hearing on the motion, the attorney general's office made it clear that its office did not receive a copy until 2 weeks after the deadline and only days before the hearing on the motion. Additionally, the trial court noted in ruling on the motion that the plaintiff had not filed a timely response. The trial court was well aware that the document may have been timely filed; the plaintiff's problem was with his failure to timely serve counsel.

The plaintiff's counsel argues with enthusiasm that the trial court should have believed his affidavit and that of his secretary in which it was asserted that the response was timely served. We note, however, that at the hearing on the motion, the plaintiff's attorney was at a loss to explain why none of the three attorneys representing the different defendants had received a copy of the responsive memorandum. The plaintiff's counsel told the court, "We did comply with the rule. I'm sorry they didn't get it. I have no explanation for why, but we did comply with the rule."

The record indicates otherwise; the record, along with the testimony of the attorneys for WSU, indicates that no service was

made. Under these circumstances, the question at hand was which version of the facts the trial court was going to believe. It is obvious that the trial court decided to believe the version offered by WSU and rejected the insistence by the plaintiff's attorney that service had been made. We agree with that decision. While it is possible that one or even two of the memoranda may have been lost in the mail, it is hard for us to imagine how all three of them could have been lost. In addition to failing to comply with the rule regarding service, the court noted that the plaintiff's response did not properly controvert facts under Rule 141 where it stated that he did not have the information by which to affirm or deny those facts.

We conclude the trial court's discretion was not abused; the trial court did not err in determining that the plaintiff failed to comply with the rule for serving opposing counsel with a copy of the responsive memorandum, and its decision to impose sanctions was neither arbitrary, fanciful, nor unreasonable. We affirm the trail court's decision in this regard.

One of the issues involved was whether the recreational use exception was unconstitutional because it violated the Equal Protection Clause of the Constitution of the United States. At the time this matter was argued, there was a case pending in the Kansas Supreme Court in which the trial court had held that the Equal Protection Clause was violated by the recreational use exception and that such exception was unconstitutional. One of the reasons the decision in this case has been delayed is that we have been waiting on the Supreme Court to resolve the issues raised in that case.

The Supreme Court did resolve those issues in *Barrett v. U.S.D. 259*, 272 Kan. 250, 32 P.3d 1156 (2001). This opinion thoroughly reviewed an equal protection challenge to the recreational use exception as set forth in K.S.A. 75-6104(o). The Supreme Court used a rational basis review to hold the recreational use exception did not violate equal protection. We agree with the Supreme Court's decision in *Barrett*; it is controlling on this issue, and we hold that the plaintiff's argument to the contrary is without merit.

The plaintiff finally argues that there is a genuine issue of material fact as to whether Rusty Eck Stadium is used for recreational

purposes because it is mainly used for NCAA Division I baseball games.

While we believe there is a point at which it is no longer feasible to consider a college stadium a recreational facility, that point has not been reached in this case, and we affirm the trial court's decision that Rusty Eck Stadium was, indeed, a recreational use facility.

The stadium is, indeed, used mainly for NCAA Division I baseball games. We note:

"The NCAA is a voluntary, unincorporated association of some 800 colleges and universities as well as some 175 other sports-related organizations. The voting membership is wholly composed of four-year colleges and universities and athletic conferences comprised of NCAA member institutions. The NCAA promotes, develops, and regulates twelve intercollegiate sports." *NCAA v. Kansas Dept. of Revenue*, 245 Kan. 553, 554, 781 P.2d 726 (1989).

WSU and Evansville are both members of the Missouri Valley Conference, playing as Division I NCAA baseball programs. The constitution of that conference provides that the conference operations are bound by the rules and regulations of the NCAA unless conference rules are more restrictive.

We have examined the constitution of the NCAA, and it makes it clear that the use of Rusty Eck Stadium is recreational rather than professional in nature. That document provides in part:

"The competitive athletics programs of member institutions are designed to be a vital part of the educational system. A basic purpose of this Association is to maintain intercollegiate athletics as an integral part of the educational program and the athlete as an integral part of the student body and, by so doing, retain a clear line of demarcation between intercollegiate athletics and professional sports." 1997-98 NCAA Division I Manual, p. 1 (1997).

The NCAA operating bylaws, especially article 12 which is devoted to "Amateurism," demonstrates that it is not a professional organization for purposes of the KTCA.

"12.01.2 Clear Line of Demarcation. Member institutions' athletics programs are designed to be an integral part of the educational program and the student-athlete is considered an integral part of the student body, thus maintaining a clear line of demarcation between college athletics and professional sports.

"12.02.2 Pay. Pay is the receipt of funds, awards or benefits not permitted by the governing legislation of the Association for participation in athletics.

"12.02.3 Professional Athlete. A professional athlete is one who receives any kind of payment, directly or indirectly, for athletics participation except as permitted by the governing legislation of the Association.

. . . .

"12.1.1 Amateur Status. An individual loses amateur status and thus shall not be eligible for intercollegiate competition in a particular sport if the individual:

(a) Uses his or her athletics skill (directly or indirectly) for pay in any form in that sport;

(b) Accepts a promise of pay even if such pay is to be received following completion of intercollegiate athletics participation;

(c) Signs a contract or commitment of any kind to play professional athletics, regardless of its legal enforceability or any consideration received;

(d) Receives, directly or indirectly, a salary, reimbursement of expenses or any other form of financial assistance from a professional sports organization based upon athletics skill or participation, except as permitted by NCAA rules and regulations;

(e) Competes on any professional athletics team and knows (or had reason to know) that the team is a professional athletics team (per [Bylaw] 12.02.4), even if no pay or remuneration for expenses was received; or

(f) Enters into a professional draft or an agreement with an agent (see also [Bylaw] 12.2.4.2.1).

. . . .

"12.1.2.1 Professional at Later Date. If the individual later becomes involved in professional athletics while still a student-athlete with remaining eligibility, the individual would be considered to have violated the principles of ethical conduct per Bylaw 10, thus rendering the individual ineligible for intercollegiate competition.

. . . .

"12.2.3.2.3 Amateur/Professional Leagues. An individual may participate as a member of an amateur team in a league in which one or more teams are professional, provided the league is not a member of a recognized professional sports organization or is not directly supported or sponsored by a professional sports team or organization." 1997-98 NCAA Division I Manual, pp. 69-74 (1997).

Aside from the NCAA rules and not wishing to put too much reliance on that organization's definitions of amateur, we also conclude that Rusty Eck Stadium qualifies for immunity as "public property intended or permitted to be used as a park, playground or open area for recreational purposes" under K.S.A. 1999 Supp. 75-6104(o). WSU is a state educational institution and a separate agency of the State of Kansas. See K.S.A. 76-711 and K.S.A. 76-712. As a result, the KTCA is applicable to WSU and its employees

as a governmental entity. K.S.A. 1999 Supp. 75-6102(a), (c), and (d).

K.S.A. 1999 Supp. 75-6104(o) provides a governmental entity with immunity for

"any claim for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes, unless the governmental entity or an employee thereof is guilty of *gross and wanton negligence* proximately causing such injury." (Emphasis added.)

As it develops in this case, the recreational use exception will apply unless the WSU employees were guilty of gross and wanton negligence.

The plaintiff argues there are genuine issues of material fact as to whether WSU's alleged coaching negligence was willful or wanton.

Unfortunately for the plaintiff, this issue is raised for the first time on appeal. A new legal theory may not be asserted for the first time on appeal or raised in a reply brief. *Jarboe v. Board of Sedgwick County Comm'rs*, 262 Kan. 615, 622, 938 P.2d 1293 (1997).

The fact of the matter is that despite how fervently the plaintiff may wish it were not so, his petition alleged simple negligence on the parts of Stephenson and Kemnitz, who are WSU employees.

As we have demonstrated, absent gross and wanton negligence, WSU is immune from liability under the recreational use exception of the KTCA for events that took place at Rusty Eck Stadium. *Tullis v. Pittsburg State Univ.*, 28 Kan. App. 2d 347, 16 P.3d 971 (2000).

This case was framed and tried on the plaintiff's allegations; those allegations were allegations of simple negligence only, and that is not sufficient to overcome the recreational use exception of the KTCA. We hold that WSU is immune from liability in this case for that reason.

We affirm the trial court. We realize that this means no recovery for the plaintiff under facts which would indicate little, if any, justification for defendant's conduct. However, WSU is the sovereign, and the sovereign may only be subjected to a money judgment in a civil action under circumstances which the sovereign itself has

laid down. Under these facts, the sovereign is immune from any liability no matter how unfortunate the event by reason of the recreational use exception of the KTCA. That immunity requires that we affirm the decision of the trial court.

Affirmed.