(101 P.3d 1271)
No. 91,488

PAUL LOUCKS, *Appellee*, v. FARM BUREAU MUTUAL INSURANCE COMPANY, INC., *Appellant*.

Opinion filed December 3, 2004.

*Paul Hasty, Jr.*, and *Merry M. Campbell-Tucker*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for appellant.

*Gerald W. Scott, Leslie Hess,* and *Mark A. Scott*, of Gerald W. Scott, P.A., of Wichita, for appellee.

Before GREENE, P.J., PIERRON and MALONE, JJ.

MALONE, J.: This is an underinsured motorist (UIM) insurance case. Farm Bureau Mutual Insurance Company, Inc. (Farm Bureau) appeals the judgment for damages and attorney fees in favor of its insured, Paul Loucks. The legislative purpose of mandating the offer of UIM coverage was to fill a gap inherent in motor vehicle financial responsibility legislation and compulsory insurance legislation. The coverage was intended to recompense innocent persons who are injured through the wrongful conduct of motorists who because they are not financially responsible cannot be made to respond in damages. *O'Donoghue v. Farm Bureau Mut. Ins. Co.,* 275 Kan. 430, Syl. ¶ 4, 66 P.3d 822 (2003); see K.S.A. 40-284. This case demonstrates that unanswered questions remain concerning the procedural aspects of UIM claims and the rights and responsibilities of parties involved in such claims.

### Factual and procedural background

On January 14, 1995, Loucks, acting in the course of his employment as a car salesman with Burtis Motor Company, Inc. (Burtis), was injured in an accident caused by a truck driven by Diciderio Celiz. Loucks was in the Burtis car lot showing a station

wagon to a customer, Don Hapes. Loucks walked over to the station wagon where he opened the door, started the engine, and stepped out of the vehicle. Loucks was standing between the station wagon and a 1984 Cutlass. Hapes was listening to the engine while Loucks was telling him about the vehicle. Suddenly Loucks heard tires squealing. A truck driven by Celiz crashed into the parking lot, pinning Loucks between the Cutlass and the station wagon. Loucks sustained significant personal injuries resulting from the accident.

At the time of the accident, Celiz was insured under policies issued by State Farm Mutual Insurance Company (State Farm) and Shelter Insurance Company (Shelter) with aggregate limits of $50,000 in liability coverage. Loucks had a personal automobile policy with Farm Bureau with total UIM limits of $300,000. Burtis had insurance coverage through Universal Underwriters Insurance Company (Universal). The Universal policy provided UIM coverage to Burtis and its employees with limits of $25,000. Certain individuals were listed under an endorsement for UIM coverage with limits of $300,000. Loucks was not included in the endorsement.

On January 8, 1997, Loucks filed a personal injury and negligence lawsuit against Celiz in Finney County District Court, *Loucks v. Celiz*, case No. 97-C-8 (*Celiz*, 97-C-8). Loucks gave written notice of his action to his insurer, Farm Bureau. State Farm and Shelter hired David Rebein, an attorney, to represent Celiz. Loucks subsequently filed a motion for punitive damages. On June 1, 1999, Rebein stipulated that Celiz was 100% at fault and that punitive damages should be awarded.

State Farm and Shelter offered to settle Loucks' claims against Celiz for policy limits of $50,000. Loucks' attorney, Leslie Hess, notified Farm Bureau of the tentative settlement by complying with the provisions of K.S.A. 40-284(f). Farm Bureau, to preserve its UIM subrogation rights against Celiz, substituted its payment of $50,000 to Loucks.

On June 11, 1999, Farm Bureau filed a formal motion to intervene in *Celiz*, 97-C-8 to protect its UIM interest. However, Farm Bureau subsequently decided to withdraw its motion after reaching

a settlement agreement with State Farm and Shelter. The agreement was reduced to writing in a June 18, 1999, letter from Farm Bureau's counsel to Rebein:

"Farm Bureau accepts your proposal whereby Farm Bureau withdraws its motion to intervene in this case in consideration for the agreement of your clients not to settle this lawsuit or confess judgment without Farm Bureau's consent, your agreement to appear at trial and vigorously defend the lawsuit, and your agreement to reimburse Farm Bureau the $50,000 substitution payment it has made."

On June 24, 1999, Loucks moved to dismiss *Celiz*, 97-C-8. Loucks had already recovered $50,000, representing Celiz' liability policy limits. Also, Loucks knew from discovery that Celiz, a Mexican citizen, had returned to Mexico and was judgment proof. The district court permitted dismissal of the lawsuit without prejudice. Loucks never released Celiz from liability for the accident.

On October 20, 1999, Loucks filed a UIM action against Farm Bureau in Finney County District Court, *Loucks v. Farm Bureau*, case No. 99-C-270 (*Farm Bureau*, 99-C-270). Farm Bureau filed a motion to dismiss for failure to state a cause of action. The district court denied Farm Bureau's motion to dismiss.

On December 10, 1999, the initial case of *Celiz*, 97-C-8 was refiled as *Loucks v. Celiz*, case No. 99-C-310 (*Celiz*, 99-C-310) as a subrogation action brought by Farm Bureau in the name of its insured Loucks. The lawsuit was filed by Wendell Wurst, counsel for Farm Bureau. This case was consolidated with *Farm Bureau*, 99-C-270 for purposes of discovery. Wurst subsequently withdrew as plaintiff's counsel in *Celiz*, 99-C-310. Loucks' personal attorneys declined to prosecute the refiled case. Several months later, Bradley Maudlin, an attorney, entered an appearance for the plaintiff in *Celiz*, 99-C-310 at the direction of Farm Bureau. However, Maudlin made no attempt to contact Loucks about the case.

On December 22, 2000, Farm Bureau filed a motion requesting the cases be tried separately and requesting that *Celiz*, 99-C-310 should be tried first. Loucks filed a response that *Farm Bureau*, 99-C-270 should be tried first. On May 10, 2001, the district court ruled that *Farm Bureau*, 99-C-270 should be tried first and set the trial for October 16, 2001.

On September 7, 2001, Farm Bureau filed a motion for summary judgment on Loucks' claim for UIM benefits in *Farm Bureau*, 99-C-270. The motion alleged that Loucks had breached his insurance policy with Farm Bureau by dismissing his original personal injury lawsuit against Celiz and pursuing a direct action against Farm Bureau. The district court did not rule on this motion prior to trial. On October 16, 2001, *Farm Bureau*, 99-C-270 came before the district court for a jury trial. Loucks presented evidence of his injuries and damages resulting from the January 14, 1995, accident. The jury returned a verdict of $171,750 in favor of Loucks.

On March 11, 2002, Farm Bureau filed another motion for summary judgment in *Farm Bureau*, 99-C-270. This motion alleged that Loucks was an insured person under the Universal policy issued to Burtis and that the Universal policy provided primary coverage for Loucks' claim. On December 30, 2002, the district court ruled against Farm Bureau on the motions for summary judgment. On January 27, 2003, the district court entered judgment in favor of Loucks in the amount of $146,207.27, which was less than the jury verdict due to a credit for expenses covered by workers compensation. The district court also ordered that Loucks was entitled to recover attorney fees from Farm Bureau pursuant to K.S.A. 40-256 and K.S.A. 40-908.

Although Judge Philip C. Vieux entered the order allowing attorney fees, Judge Michael L. Quint conducted the hearing to determine the amount of fees to be awarded. After hearing evidence, Judge Quint awarded attorney fees on behalf of Leslie Hess in the amount of $37,387.50, plus expenses of $3,361.10. The court awarded attorney fees on behalf of Gerald Scott in the amount of $134,790. Farm Bureau timely appeals.

*Issues*

Farm Bureau makes the following claims on appeal:

1. The trial court erred in finding that Loucks did not breach the insurance policy by dismissing his lawsuit against Celiz and pursuing a direct action against Farm Bureau.

2. The trial court erred in ordering that the UIM case of *Farm Bureau*, 99-C-270 be tried before the subrogation case of *Celiz*, 99-C-310.

3. The trial court erred in finding that Loucks did not have UIM coverage with Universal.

4. The trial court erred in finding that Loucks was entitled to attorney fees from Farm Bureau.

5. The trial court erred in assessing the amount of attorney fees.

We will address the issues in the order raised by Farm Bureau.

### Breach of insurance policy

Farm Bureau argues the district court erred in finding that Loucks did not breach the insurance policy by dismissing his lawsuit against Celiz and pursuing a direct action against Farm Bureau. According to Farm Bureau, Loucks' actions bar any recovery under the Farm Bureau policy for UIM protection. The district court denied Farm Bureau's motion for summary judgment on this issue.

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, [appellate courts] apply the same rules and where . . . reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002).

There is no factual dispute between the parties, leaving this court purely a question of law upon which our review is unlimited. See *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991); K.S.A. 2003 Supp. 60-256(c). Furthermore, construction of a written contract and statutory interpretation are questions of law over which an appellate court exercises unlimited review. *Elliott v. Farm Bureau Ins. Co., Inc.*, 26 Kan. App. 2d 790, 793, 995 P.2d 885 (1999), *rev. denied* 269 Kan. 932 (2000).

Before turning to the specific dispute between Loucks and Farm Bureau, we will review the substance and procedure of a UIM claim in general. Recognizing there are many drivers on the roadways with little or no liability coverage on their vehicles, Kansas law requires all automobile insurance policies to have UIM coverage with limits equal to the liability limits provided for the insured vehicle. This coverage enables the insured to recover from his or her own insurer damages for bodily injury or death to which the insured is legally entitled to the extent such coverage exceeds the limits of the bodily injury coverage carried on the other vehicle. K.S.A. 40-284(b). For example, if an insured with UIM coverage of $300,000 was injured by a driver with only $50,000 in coverage, the insured has an additional $250,000 bodily injury coverage with his or her own insurer. UIM coverage is mandatory unless rejected in writing by the insured. K.S.A. 40-284(c).

When an insured motorist is injured in an automobile accident with an underinsured motorist, two separate but related causes of action are triggered. First, the insured motorist has a tort claim against the underinsured motorist based upon negligence. Second, assuming it appears that the insured motorist's damages exceed the tortfeasor's liability coverage, the insured motorist has a UIM claim against his or her own insurer. The UIM claim is based upon contract. Although the two causes of action involve different defendants and distinct legal theories, the issues to be resolved are primarily the same, *i.e.*, the respective liability of the parties involved in the accident and the amount of damages sustained by the insured motorist who is pursuing the claims.

If an insured motorist decides to file a lawsuit against an underinsured motorist, the insured motorist must provide notice to his or her own insurer if the insured motorist wishes to reserve a claim against the insurer for UIM coverage. See K.S.A. 40-284(e)(5) and (f). Since the UIM insurer has an interest in the outcome of the tort claim for damages, a question arises whether the UIM insurer can be named as a party to the lawsuit. This question was answered in *Haas v. Freeman*, 236 Kan. 677, 693 P.2d 1199 (1985). Haas was injured in an automobile accident with Freeman. Freeman had liability insurance coverage with limits of $25,000, while Haas had

coverage with his own insurer, Horace Mann Insurance Company, with limits of $100,000. Haas sued Freeman for damages exceeding $25,000 and attempted to name his own insurer as a party to the lawsuit. The insurer filed a motion to dismiss which was granted by the district court.

The Kansas Supreme Court affirmed and in the process created a rule of law for handling the competing causes of action involved in UIM claims. The court held that when a litigant determines the opposing party's liability coverage is below the amount of damages claimed and wishes to invoke the UIM clause of his or her insurance policy, he or she shall notify his or her insurer in the manner prescribed in the policy. The insurer may then intervene in the case at its election. If the insurer elects to intervene, it shall be named as a party to the action. If the insurer elects not to intervene, K.S.A. 60-454, which prohibits the admission of evidence of liability insurance coverage, is applicable. In either case, the UIM insurer is bound by any judgment obtained in the action. 236 Kan. at 683.

The court's equitable decision in *Haas* strikes a balance between the rights of the insured and the insurer in a tort claim involving a potential recovery of UIM benefits. The decision gives the UIM insurer the option whether to intervene as a party in an underlying tort claim for damages. If an insurer chooses to intervene as a party, the insurer gains a voice in the outcome of the case. The insurer may choose not to intervene, in which case the trier of fact will not hear evidence of liability insurance coverage. However, if the insurer chooses not to intervene, the insurer is nonetheless bound by any judgment even though it is not a party to the lawsuit.

*Haas* does not prevent an insured from filing a direct action against the insurer in order to attempt to recover UIM benefits under the policy. In *Gifford v. Farm Bur. Mut. Ins. Co.*, 14 Kan. App. 2d 740, 799 P.2d 105, *rev. denied* 248 Kan. 995 (1990), Gifford, a passenger, was injured in a one-vehicle accident. The driver's liability policy limit was $50,000. Gifford had UIM coverage with Farm Bureau with limits of $100,000. Gifford reached a tentative settlement with the driver's insurer for policy limits and notified Farm Bureau of the settlement pursuant to statute. Farm

Bureau declined to substitute its payment for the tentative settlement amount. Accordingly, Gifford accepted the settlement offer and released the driver from liability. Gifford then filed a UIM claim directly against Farm Bureau. Farm Bureau filed a motion to dismiss claiming that, under *Haas*, Gifford could not bring a direct action against Farm Bureau for recovery of UIM benefits. The district court granted Farm Bureau's motion to dismiss.

The Court of Appeals reversed and held that an insured has a right to bring a direct action against his or her insurer in order to attempt to recover UIM benefits. 14 Kan. App. 2d at 745-48. The court stated:

"We know of and have been referred to no statutory or case authority that supports Farm Bureau's broad assertion that an injured party's initiation of an action directly against the party's underinsured motorist carrier is not permitted by Kansas law. The *Haas* 'rule' does not support that proposition. It applies to an action prosecuted by a UIM insured against an underinsured tortfeasor. We are aware of no authority prohibiting a first-party action by a UIM insured against its UIM insurer." 14 Kan. App. 2d at 746-47.

Furthermore, there is no statutory requirement that the insured pursue any recovery from the tortfeasor before seeking UIM benefits. In *Brown v. USAA Cas. Ins. Co.*, 17 Kan. App. 2d 547, 840 P.2d 1203, *rev. denied* 252 Kan. 1091 (1992), the insured failed to bring a lawsuit against the tortfeasor arising from an automobile accident within the 2-year statute of limitations. However, the insured filed a UIM claim directly against her insurer within the statute of limitations for a contract action. The insurance policy contained an "exhaustion clause" requiring the insured to exhaust remedies against the tortfeasor prior to filing a claim for UIM benefits. The insurer filed a motion for summary judgment based upon the exhaustion clause in the policy. The district court denied the motion, and the insurer filed an interlocutory appeal.

The Court of Appeals affirmed and held that the insured's failure to bring a timely lawsuit against the tortfeasor did not preclude the collection of UIM benefits. The court ruled that the statutory requirement that the insured be "legally entitled" to damages from the tortfeasor does not require the insured to obtain a judgment against the tortfeasor before the insured is entitled to UIM bene-

fits, and the court held that the policy's exhaustion clause was void and unenforceable as a matter of public policy. 17 Kan. App. 2d at 548-50. See also *Burke v. Schroth*, 4 Kan. App. 2d 13, 15-18, 601 P.2d 1172 (1979) (uninsured motorist case prior to *Haas* where insured was allowed to dismiss tort claim and file a lawsuit against insurer although the statute of limitations against the tortfeasor had expired).

Another important aspect of any claim for UIM benefits is the UIM insurer's subrogation rights in the event of a settlement between the insured and the tortfeasor. Pursuant to K.S.A. 40-284(f), if a tentative agreement to settle for liability limits has been reached with the tortfeasor, written notice must be given to the UIM insurer by its insured. Within 60 days of receipt of this written notice, the UIM insurer may substitute its payment to the insured for the tentative settlement amount. The UIM insurer is then subrogated to the insured's right of recovery against the tortfeasor. This statutory subrogation right is important to allow the UIM insurer to pursue recovery of any loss it incurs under its UIM policy from the tortfeasor who should ultimately be liable for such damages. The process prevents the tortfeasor from being fully released from liability even though the underinsured tortfeasor has reached a settlement for liability policy limits.

Returning to the dispute between Loucks and Farm Bureau, Loucks initially filed a personal injury damages claim against Celiz, the tortfeasor. Loucks agreed to a settlement with Celiz for $50,000, the amount of Celiz' liability policy limits, and Loucks notified Farm Bureau of the settlement pursuant to K.S.A. 40-284(f). Farm Bureau elected to substitute its payment of $50,000 to Loucks to preserve its UIM subrogation rights against Celiz. Farm Bureau initially filed a motion to intervene as a party in the damages case but subsequently decided to withdraw its motion. Thereafter, Loucks moved to dismiss his lawsuit against Celiz, which the court granted without prejudice. Loucks then filed a direct action against Farm Bureau in order to recover UIM benefits under his policy.

Farm Bureau claims that Loucks' actions of dismissing his lawsuit against Celiz and filing a direct action against Farm Bureau

constituted a breach of the insurance policy issued by Farm Bureau to Loucks. Specifically, Farm Bureau claims that Loucks' actions violated the policy provisions regarding Farm Bureau's recovery rights against Celiz. As a result of the alleged policy breach, Farm Bureau maintains that Loucks should be barred from any recovery under the policy for UIM benefits.

Farm Bureau's policy prohibits Loucks from taking any action to prejudice Farm Bureau's rights of subrogation against a tortfeasor and requires Loucks to help Farm Bureau exercise its rights. The policy states:

"**PART D-UNINSURED MOTORISTS COVERAGE (INCLUDING UNDERINSURED MOTORISTS PROTECTION)**

. . . .

"**OUR RECOVERY RIGHTS**

"We have the right to recover our payments, under this coverage. This means that after paying a loss to an insured person, we will have that person's right to sue for or otherwise recover such loss from anyone else who may be held responsible. The insured person must protect our rights of recovery.

. . . .

"**PART F-GENERAL PROVISIONS**
"**OUR RECOVERY RIGHTS**

"In the event of any payment under this policy, we are entitled to all the rights of recovery of the person to whom payment was made against another. That person must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights and do nothing after loss to prejudice our rights."

Farm Bureau relies upon *Dalke v. Allstate Ins. Co.*, 23 Kan. App. 2d 742, 935 P.2d 1067, *rev. denied* 262 Kan. 960 (1997), in its argument that Loucks breached the insurance policy. In *Dalke*, an insured settled her claim for injuries arising from an automobile accident and released the tortfeasor from liability, all without notice to the UIM insurer. The insured then brought a lawsuit directly against the UIM insurer in an attempt to recover UIM benefits. The district court granted summary judgment in favor of the insurer on the ground that the insured had forfeited her right of recovery under her policy's UIM provisions.

The Court of Appeals affirmed and held that the insured's action of settling and releasing the tortfeasor from liability without notice

to the UIM insurer violated both her statutory and contractual duty to the insurer. The insured's action cut off the insurer's subrogation rights and, as a result, forfeited the insured's right to recover UIM benefits. The court noted a public policy to allow the recoupment of damages by the insurer from the tortfeasor rather than placing the entire burden upon the insurer which in turn is passed to all insurance consumers. 23 Kan. App. 2d at 749-50.

*Dalke* is distinguishable since Loucks complied with K.S.A. 40-284(f) in notifying Farm Bureau of the settlement with Celiz. Not only was Farm Bureau properly notified of the settlement, but Farm Bureau substituted its payment of $50,000 to Loucks in order to preserve its subrogation rights against Celiz. Although Loucks proceeded to dismiss his lawsuit against Celiz, the dismissal was without prejudice. More importantly, Loucks never released Celiz from liability for damages arising from the accident.

Farm Bureau's argument that Loucks breached the insurance policy by dismissing the lawsuit against Celiz overlooks the fact that Loucks was never required to file the lawsuit in the first place. As previously discussed, Loucks was not required to file a lawsuit against Celiz as a prerequisite to seeking UIM benefits under his own policy. *Brown*, 17 Kan. App. 2d at 548-50. After the lawsuit against Celiz was dismissed, Farm Bureau was in the same position with respect to its rights against Celiz as it would have occupied had the lawsuit never been filed.

Loucks also did not breach his insurance policy by filing a separate lawsuit directly against Farm Bureau to attempt to recover UIM benefits. As previously discussed, an insured has a right to bring a direct action against his or her insurer in order to attempt to recover UIM benefits. *Gifford*, 14 Kan. App. 2d at 746-47.

Farm Bureau's subrogation rights against Celiz have been fully protected and are still intact. The dismissal of Loucks' initial lawsuit against Celiz was without prejudice, which allowed Farm Bureau to refile the lawsuit. Loucks has never released Celiz from liability. Furthermore, Loucks has fully cooperated with Farm Bureau in the refiled lawsuit against Celiz. He clearly stated his cooperation and agreed to give a deposition, provide medical records and dis-

covery, participate in independent medical evaluations, and be a witness at trial.

Farm Bureau's policy issued to Loucks, which Farm Bureau drafted, requires Loucks to protect Farm Bureau's right of recovery against Celiz. The policy requires Loucks to "do whatever else is necessary to help [Farm Bureau] exercise those rights and do nothing after loss to prejudice [Farm Bureau's] rights." Loucks has done nothing to violate the provisions of his policy with Farm Bureau. Accordingly, the district court did not err in denying Farm Bureau's motion for summary judgment based upon breach of the insurance policy.

### Scheduling order of trials

Next, Farm Bureau argues the district court erred in ordering that the UIM case of *Farm Bureau*, 99-C-270 be tried before the refiled subrogation case of *Celiz*, 99-C-310, which Farm Bureau refers to as the "damages case." Farm Bureau asserts this issue is a question of law allowing unlimited appellate review but cites no authority for this assertion. We believe that the scheduling order of trials on the court's calendar is a discretionary function of the district court. "Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. [Citation omitted.]" *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 44, 59 P.3d 1003 (2002). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Molina v. Christensen*, 30 Kan. App. 2d 467, 470, 44 P.3d 1274 (2001).

Farm Bureau requested the district court to order the refiled damages case of *Celiz*, 99-C-310 to proceed to trial before the UIM case of *Farm Bureau*, 99-C-270. The district court refused the request. Farm Bureau argues the damages case should have been tried first because Loucks, Celiz, and all UIM carriers would have been bound by the result. See *Haas*, 236 Kan. 677, Syl. ¶ 1. Farm Bureau correctly notes that Celiz is not bound by the judgment entered in *Farm Bureau*, 99-C-270 because Celiz was not a party to that action. Farm Bureau argues that the district court's decision to try the UIM case first will cause the issues of fault and damages

to be tried a second time if Farm Bureau pursues its subrogation rights against Celiz.

Farm Bureau cites no authority to support this claimed error except *Haas*, 236 Kan. 677. However, *Haas* does not support Farm Bureau's position that a damages action against the tortfeasor must be tried before a contract action against the UIM insurer. As previously discussed, *Haas* merely states that a UIM insurer may not be sued by the insured in the same action as the tortfeasor unless the insurer elects to intervene. 236 Kan. at 683.

The refiled damages case of *Celiz*, 99-C-310 was in reality a subrogation action brought by Farm Bureau in the name of the insured, Loucks, as authorized under K.S.A. 40-284(f) and K.S.A. 40-287. The lawsuit was filed by Wendell Wurst, counsel for Farm Bureau. Loucks had no personal stake in the lawsuit, since he had already recovered $50,000 representing Celiz' liability policy limits. Loucks also knew from discovery that Celiz was a Mexican citizen who had returned to Mexico and was judgment proof. Nevertheless, Loucks' UIM insurance policy with Farm Bureau required Loucks to assist Farm Bureau exercise its subrogation rights against Celiz. As previously discussed, Loucks satisfied this provision by agreeing to cooperate with Farm Bureau's attorney who refiled the case.

After *Celiz*, 99-C-310 was refiled in district court, the case languished for months without any real activity. Wurst withdrew as plaintiff's counsel due to a perceived conflict of interest, and Loucks' personal attorneys declined to prosecute the case. At the time Farm Bureau filed its motion requesting that *Celiz*, 99-C-310 be tried first, there was no counsel of record for the plaintiff in the subrogation/damages case. Several months later, Bradley Maudlin, an attorney, entered an appearance at the direction of Farm Bureau. However, at the time the UIM case of *Farm Bureau*, 99-C-270 proceeded to trial, there had never been any contact between Maudlin and Loucks.

Farm Bureau correctly notes that the district court's decision to try the UIM case first requires the issues of liability and damages to be tried twice if Farm Bureau pursues its subrogation claim against Celiz. Celiz is not bound by the judgment entered in the

UIM case because he was not a party to that case. However, Farm Bureau could have avoided the problem of facing two trials by agreeing to a consolidated trial of the two cases rather than filing its motion requesting that the cases be tried separately. In a consolidated trial, Celiz would have been bound by the jury's verdict on damages.

Under the unusual facts and circumstances of this case, we cannot say that the district court abused its discretion in ordering the UIM case to be tried before the refiled subrogation/damages case. As the district court noted in its final journal entry granting judgment to Loucks:

"31. Farm Bureau's subrogation action, Case No. 99 C 310, had a very protracted period of time of nonrepresentation of Farm Bureau after Wendell Wurst was allowed to withdraw. During that time, this court specifically ordered Farm Bureau to have counsel enter an appearance on its behalf and to show cause why the Farm Bureau action in Case No. 99 C 310 should not be dismissed for lack of prosecution."

The record indicates that counsel for all parties were ready to proceed to trial in the UIM case of *Farm Bureau*, 99-C-270. This was not the case in *Celiz*, 99-C-310. We conclude that the district court did not abuse its discretion in ordering the UIM case to be tried first.

Although we conclude that the district court did not abuse its discretion in this instance in ordering the UIM case to be tried first, we hasten to note that it may have also been within the district court's discretion not to do so. Under different circumstances, when both a damages case against the tortfeasor and a contract case against the UIM insurer are pending at the same time, it could possibly be an abuse of discretion for the district court to order the UIM case to be tried first. Under the facts and circumstances of this case, however, the district court did not abuse its discretion in scheduling the order of the trials.

### Coverage under Universal policy

Farm Bureau argues the district court erred in finding that Loucks did not have UIM coverage under the Universal policy issued to Burtis, Loucks' employer. Construction of a written con-

tract, including an insurance policy, is a question of law over which an appellate court exercises unlimited review. *Elliott v. Farm Bureau Ins. Co., Inc.*, 26 Kan. App. 2d 790, 793, 995 P.2d 885 (1999), *rev. denied* 269 Kan. 932 (2000).

In its second summary judgment motion, Farm Bureau attempted to avoid its UIM coverage by claiming that Loucks was insured under the Universal policy issued to Burtis. On appeal, Farm Bureau argues that the Universal policy provided UIM coverage for Loucks with limits up to $300,000 due to an ambiguity in the policy. Farm Bureau also argues that Loucks was "occupying" an automobile owned by Burtis at the time of the accident. Farm Bureau must overcome both burdens to establish coverage under the Universal policy.

The threshold question is the amount of UIM coverage provided to Loucks under the Universal policy. Since Celiz had $50,000 in liability coverage, Universal's policy would not apply unless its UIM coverage exceeded the tortfeasor's liability coverage. See *Halsey v. Farm Bureau Mut. Ins. Co.*, 275 Kan. 129, 143, 61 P.3d 691 (2003). The Universal policy specifies that Burtis and its employees are insured up to $25,000 per person for UIM coverage. The policy then provides for specific individuals, not including Loucks, to receive up to $300,000 in UIM benefits. Farm Bureau argues that the language in the policy creates an ambiguity as to whom is covered by the $300,000 limit.

"An insurance policy is construed to give effect to the intention of the parties. *Brumley v. Lee*, 265 Kan. 810, 812, 963 P.2d 1224 (1998). If the policy is not ambiguous, it is enforced as made, but if it is ambiguous, it is given the construction most favorable to the insured. 265 Kan. 812-13. 'The test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean.' *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, Syl. ¶ 2, 934 P.2d 65 (1997)." *Hodgson v. Bremen Farmers' Mut. Ins. Co.*, 27 Kan. App. 2d 231, 233, 3 P.3d 1281, *rev. denied* 268 Kan. 886 (1999).

The Universal policy lists Burtis as "01" in the list of named insureds. The policy includes "paid employees" as being covered by the policy. For UIM benefits, the limits for the "01" named insured is $25,000/$50,000. Later in the policy, another limit of

$300,000 for UIM benefits is set forth with the insureds listed as "see below EE." Several specific individuals are then listed under "Endorsements Applicable." The individuals listed do not include Loucks. There is some ambiguity in the policy because the list of individuals under the endorsements applicable section is not identical to the list of names included under another section labeled "Other Insureds." However, Loucks' name is not included on either list. When the policy is viewed as a whole, there is no ambiguity that UIM coverage for Loucks as a Burtis employee is limited to $25,000.

Since Celiz' liability coverage exceeds the amount of Universal's coverage for Loucks, the Universal policy is not available to Loucks for UIM benefits. Accordingly, we do not need to reach the issue whether Loucks was "occupying" an automobile owned by Burtis at the time of the accident. The district court did not err in denying Farm Bureau's motion for summary judgment concerning coverage under the Universal policy.

### Attorney fees

Farm Bureau argues the district court erred in awarding attorney fees pursuant to K.S.A. 40-256 and K.S.A. 40-908. Attorney fees cannot be granted by a court absent statutory authority or an agreement by the parties. *United States Fidelity & Guaranty Co. v. Maish*, 21 Kan. App. 2d 885, 905-06, 908 P.3d 1329 (1995). The issue of whether the district court had the authority to impose attorney fees under a particular statute is a question of law over which appellate review is plenary. See *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan, 875, 879, 953 P.2d 1027 (1998). Once the district court determines that a party is entitled to attorney fees, the amount of attorney fees to be awarded is a matter left to the discretion of the district court. *Dickinson, Inc. v. Balcor Income Properties Ltd.*, 12 Kan. App. 2d 395, 401, 745 P.2d 1120 (1987), *rev. denied* 242 Kan. 902 (1988).

K.S.A. 40-256 provides:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company as defined in K.S.A. 4-201, and including in addition thereto any fraternal benefit society and any reciprocal or interinsurance

exchange on any policy or certificate of any type or kind of insurance, if it appear from the evidence that such company, society or exchange has refused *without just cause or excuse* to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs: *Provided, however*, That when a tender is made by such insurance company, society or exchange before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed." (Emphasis added.)

Both parties agree that K.S.A. 40-256 applies to Loucks' claim. However, Farm Bureau argues that the district court erred in finding that Farm Bureau acted without just cause or excuse in denying the UIM benefits.

"Where the trial court has made findings of fact and conclusions of law, the function of [an appellate] court . . . is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law." *Gillespie v. Seymour*, 250 Kan. 123, Syl. ¶ 1, 823 P.2d 782 (1991).

" 'Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. [Citation omitted.]Stated in another way, "substantial evidence" is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion.' [Citation omitted.]" 250 Kan. at 129.

The record contains ample evidence that Farm Bureau withheld payment of Loucks' claim without just cause or excuse. Although Loucks' UIM case was contested in district court for over 3 years, the issues were relatively simple. Liability was never disputed as it was clear from the beginning that Celiz was 100% at fault for the accident. Loucks' injuries were substantial, and it should have been clear to all parties that the amount of Loucks' damages exceeded Celiz' liability policy limits. We note that Farm Bureau makes no claim on appeal that the jury verdict of $171,750 for Loucks' damages was excessive.

Loucks presented an expert affidavit from David Calvert on the issue of attorney fees. Calvert stated that "[t]he facts of this case are complex only because Farm Bureau made them so by injecting every possible defense and obstacle imaginable." In its December 30, 2002, memorandum decision, the district court noted:

"This case has been fraught with competing motions and even competing cases. See Finney County Case No. 99 C 310 and 97 C 8. Every step in this case and in 99 C 310 has been contested and every nuance tried. The procedural stances taken and legal twists experienced in this case and 99 C 310 have been difficult and complex—some needlessly so."

This case involved substantial legal posturing between Loucks and Farm Bureau. In the end, Farm Bureau expended exceptional effort to attempt to have Loucks' damages determined without the factfinder hearing evidence of liability insurance coverage. Farm Bureau's actions might have made more sense if it was not so clear that the tortfeasor Celiz, the party who should ultimately be liable for the damages, was judgment proof. We agree with the district court that Farm Bureau's posturing was designed more to minimize its exposure to the UIM claim than to protect its subrogation rights against the tortfeasor.

We conclude that the district court's finding that Farm Bureau denied Loucks' UIM claim without just cause or excuse was supported by substantial competent evidence. The district court did not err in awarding attorney fees in favor of Loucks pursuant to K.S.A. 40-256. Since K.S.A. 40-256 provided an appropriate basis for the district court to assess attorney fees, we will not address whether attorney fees were also authorized under K.S.A. 40-908.

We now turn to the amount of attorney fees awarded by the district court. Although Judge Vieux entered the order allowing attorney fees, Judge Quint conducted the hearing to determine the amount of fees to be awarded. Judge Quint heard evidence concerning the amount of attorney fees requested, including testimony from an expert witness. Judge Quint awarded attorney fees on behalf of Leslie Hess in the amount of $37,387.50, plus expenses of $3,361.10. The court awarded attorney fees on behalf of Gerald Scott in the amount of $134,790. These amounts represented the entire claims made on behalf of each attorney.

We find two problems with the district court's award of attorney fees. First, Judge Vieux's journal entry of judgment authorizing attorney fees concluded by stating: "Plaintiff is awarded attorney fees *on both sets of summary judgment motions*, and this matter will be scheduled for a hearing on the issue of the amount of at-

torney fees owed to plaintiff." (Emphasis added.) However, the amount of attorney fees awarded includes the attorneys' work for the entire case, not just the summary judgment motions. If Judge Vieux's intent was to limit the award of attorney fees to the summary judgment motions, then the amount of attorney fees awarded was excessive.

Second, the record reflects that the amount of attorney fees requested on behalf of Hess included time on the original tort case of *Celiz*, 97-C-8. Hess' claim for attorney fees included time spent on Loucks' behalf from 1995 through 2003. The UIM case against *Farm Bureau*, 99-C-270 was not filed until October 20, 1999. In this UIM case, there is no statutory authority for the recovery of attorney fees from Farm Bureau for time spent prosecuting the underlying tort case of *Celiz*, 97-C-8. To the extent that the district court allowed such a recovery, the amount awarded was excessive.

For these reasons, the case must be remanded for a determination of reasonable attorney fees for the UIM case pursuant to K.S.A. 40-256. On remand, the judge who authorized the award of attorney fees should be assigned to determine the amount of fees to be awarded.

Affirmed in part, reversed in part, and remanded with directions.